*880 P.2d 192*

**STATE of Hawai'i, Petitioner–Appellee,**

v.

**Eric W. SCHROEDER, Respondent–Appellant.**

**No. 15356.**

Supreme Court of Hawai'i.

Aug. 30, 1994.

James M. Anderson, Deputy Pros. Atty., on the briefs, Honolulu, for petitioner-appellee State of Hawai'i.

Wendel D. Crutchfield, on the briefs, Honolulu, for respondent-appellant Eric W. Schroeder.

Before MOON, C.J., LEVINSON, NAKAYAMA and RAMIL, JJ., and Circuit Court Judge CRANDALL, Assigned in Place of KLEIN, J., Recused.

LEVINSON, Justice.

Following a jury-waived trial, the respondent-appellant Eric W. Schroeder was convicted of robbery in the first degree and kidnapping. The circuit court sentenced Schroeder to two concurrent indeterminate prison terms of twenty years, both subject to concurrent mandatory minimum prison terms of ten years. Schroeder later filed a motion to correct illegal sentence, alleging numerous grounds in support. The circuit court denied the motion.

Schroeder then appealed the denial of the motion to this court, and we assigned the matter to the Intermediate Court of Appeals (ICA). In its decision, the ICA affirmed the circuit court's denial of Schroeder's motion except with respect to the mandatory minimum sentence imposed in connection with the kidnapping conviction, as to which the ICA remanded to the circuit court with instructions to vacate that sentence. *State v. Schroeder*, —— Haw.App. ——, ——, 880 P.2d 208, 213 (1992).

The State of Hawai'i (prosecution) applied to this court for a writ of certiorari, 74 Haw. 652, 843 P.2d 144, assigning as error, *inter alia*, that the ICA had incorrectly determined that *State v. Estrada*, 69 Haw. 204, 738 P.2d 812 (1987), precluded the circuit court from imposing a mandatory minimum prison sentence in connection with the kidnapping conviction. Because we believe that the ICA reached the right result for the wrong reasons, and the result therefore requires clarification and further explication, we granted the prosecution's application.

For the reasons set forth below, we affirm.

## I. BACKGROUND

On October 10, 1985, the Oahu grand jury returned a two-count indictment charging Schroeder as follows:

*COUNT I:* On or about the 13th day of April, 1985, in the City and County of Honolulu, State of [Hawai'i], ERIC W.

SCHROEDER, while in the course of committing theft, *and while armed with a dangerous instrument, to wit, a handgun,* did threaten the imminent use of force against Phillip M. Richards, a person who was present, with the intent to compel acquiescence to the taking of or escaping with the property, thereby committing the offense of *Robbery in the First Degree* in violation of Section 708–840(1)(b)(ii) of the [Hawai'i] Revised Statutes.[1]

*COUNT II:* On or about the 13th day of April, 1985, in the City and County of Honolulu, State of [Hawai'i], ERIC W. SCHROEDER did intentionally restrain Phillip M. Richards with intent to facilitate the *commission of a felony* or flight after the commission of a felony, thereby committing the offense of Kidnapping in violation of Section 707–720(1)(c) of the [Hawai'i] Revised Statutes.[2]

(Emphasis added.)

On January 30, 1987, after a three day bench trial, the circuit court convicted Schroeder of both counts. Before setting a sentencing date and referring Schroeder to the Adult Probation Division for a pre-sentence diagnosis and report, the circuit court issued the following oral findings[3] and directive from the bench:

> The Court makes a specific finding that Mr. Schroeder was in the course of committing a theft and while in the course of committing a theft he was indeed armed with a dangerous instrument.
>
> And the Court will further find that at that particular time, and with that instrument, he did threaten the imminent use of force with that instrument against the persur [sic] of the ship and therefore what he was trying to do was compel that person's acquiescence in stealing the money which this Court finds he ultimately did after which he made his getaway.
>
> Accordingly the Court finds that the State has met its burden and does find [Schroeder] guilty of Robbery in the First Degree.
>
> The Court understands there is a second charge against [Schroeder] and that is kidnapping. And the charge is that Mr. Schroeder restrained another person with the intent to facilitate the commission of a felony. And the Court finds that indeed was the case here.

1. Hawai'i Revised Statutes (HRS) § 708–840 (1985) provides in relevant part:

    **Robbery in the first degree.** (1) A person commits the offense of robbery in the first degree if, in the course of committing theft:

    ....

    (b) [The person] is armed with a dangerous instrument and:

    ....

    (ii) [The person] threatens the imminent use of force against the person of anyone who is present with intent to compel acquiescence to the taking of or escaping with the property.

    (2) As used in this section, "dangerous instrument" means any firearm....

    (3) Robbery in the first degree is a class A felony.

    Portions of HRS § 708–840(2), defining "dangerous instrument" and that are not material to the present appeal, were amended in 1986. *See* Act 314, § 68, 1986 Haw.Sess.Laws 593, 626.

    We note that firearms "are *per se* dangerous weapons within the meaning of section 708–840." *State v. Hoke,* 69 Haw. 44, 50, 731 P.2d 1261, 1264 (1987).

2. HRS § 707–720 (1985) provides in relevant part:

    **Kidnapping.** (1) A person commits the offense of kidnapping if [the person] intentionally restrains another person with intent to:

    ....

    (c) Facilitate the commission of a felony or flight thereafter[.]

    ....

    (2) Except as provided in subsection (3), kidnapping is a class A felony.

    (3) In a prosecution for kidnapping, it is a defense which reduces the offense to a class B felony that the defendant voluntarily released the victim, alive and not suffering from serious bodily injury, in a safe place prior to trial.

    Portions of HRS § 707–720, not material to the present appeal, were amended in 1986. *See* Act 314, § 53, 1986 Haw.Sess.Laws 593, 616–17.

3. Hawai'i Rules of Penal Procedure (HRPP) 23(c) (1991) provides:

    **Trial Without a Jury.** In a case tried without a jury the court shall make a general finding and shall in addition, on request made at the time of the general finding, find such facts specifically as are requested by the parties. Such general findings may be [made] orally in open court or in writing at any time prior to sentence.

Accordingly, the Court finds again the State has met its burden and finds [Schroeder] guilty of that charge.

. . . .

. . . As far as this Court is concerned, he's guilty of the [class] A [felony]. I don't find that the victim was voluntarily released. Now, insofar as sentencing is concerned, I'm going to set a sentencing date. . . .

Now, [Schroeder] will be referred to the Adult Probation Division for a pre-sentence report prior to that particular hearing. . . .

1/30/87 Tr. at 266–68.[4]

On March 10, 1987, the prosecution filed a motion for imposition of a mandatory minimum sentence of ten years pursuant to Hawai'i Revised Statutes (HRS) § 706–660.1(a) (1985).[5] As will become apparent, the precise wording of the prosecution's motion and supporting affidavit are critical to the outcome of this appeal. In that connection, the prosecution's motion set forth the following request:

Comes now the STATE OF [HAWAI'I], and pursuant to Section 706–660.1 of the *[Hawai'i] Revised Statutes,* hereby moves this Honorable Court to sentence Eric W. Schroeder to *a mandatory term of imprisonment* of ten (10) years.

This motion is based upon all the records and files herein, upon the Affidavit attached hereto and made a part hereof by reference, and such evidence as may be adduced at the hearing on this motion.

(Additional emphasis added.) The attached affidavit, prepared by the deputy prosecuting attorney (DPA) who represented the prosecution throughout Schroeder's trial, averred in relevant part:

3. [Schroeder] was convicted of the offenses of Robbery in the First Degree and Kidnapping (both class A felonies);

4. The facts in the above-captioned *offense* show that [Schroeder] had a firearm in his possession, and threatened its use while engaged in the commission of *a felony;*

5. Based on the foregoing, it is respectfully requested that this Honorable Court sentence [Schroeder] to *a mandatory term of imprisonment* of ten (10) years.

(Emphasis added.)

The consolidated sentencing proceeding and hearing on the prosecution's motion for imposition of a mandatory minimum sentence was conducted on March 25, 1987. The prosecution was represented by a DPA, and Schroeder was represented by his trial counsel. Neither the prosecution nor the defense adduced any evidence, but rather relied solely on the pre-sentence report submitted by the Adult Probation Division, arguments of counsel, and remarks directed to the circuit court by Schroeder. Defense counsel addressed the following remarks to the circuit court regarding the prosecution's motion:

Again, I urge the Court to consider, within its discretion, to grant from 0 to 10 years mandatory minimum . for *the commission of the offense with a firearm . . . .*

---

**4.** On October 20, 1988, in a related proceeding, the circuit court entered the following unchallenged written finding of fact, based on the evidence adduced at Schroeder's trial, at which the same circuit court judge was the trier of fact:

[Schroeder] held the paymaster of an interisland cruise ship *at gunpoint,* tied him up, stole approximately $40,000.00 from the ship's safe, and fled from law enforcement officials in Los Angeles, California[.]

(Emphasis added.) It is apparent to us that this finding of fact referred directly to and characterized the oral findings quoted above.

**5.** HRS § 706–660.1 (1985) provides in relevant part:

**Sentence of imprisonment for use of a firearm in a felony.** (a) A person convicted of a

felony, where the person had a firearm in his possession and threatened its use or used the firearm while engaged in the commission of the felony, may be sentenced to a mandatory term of imprisonment the length of which shall be as follows:

(1) For a class A felony-up to 10 years[.] HRS § 706–660.1 was amended in (1) 1987, *see* Act 260, § 1, 1987 Haw.Sess.Laws 814–15, (2) 1990, *see* Act 195 § 5, 1990 Haw.Sess.Laws 422, 423–24, and (3) 1992, *see* Act 57, § 1, 1992 Haw. Sess. Laws 87–89. Although the amendments are not material to the present appeal, HRS § 706–660.1(a) (1985), as currently expanded, is now codified as HRS § 706–660.1(1) (Supp. 1992).

I am mindful of the purpose of the legislature in legislating that provision to deter the use of a firearm. I would urge that the Court be lenient in the use of that statute within the discretion of the Court and which was intended for the discretion of the Court by the Legislature. Mr. Schroeder, in the commission of *the crime,* how *it* was committed, ... was not overtly violent. Certainly there was a threat involved. But again, no overt violence. In fact, almost a passivity and a withdrawal. I would say a minimal amount to facilitate or to accomplish the commission of *the crime.*

3/25/87 Tr. at 13–14 (emphasis added).

The DPA's only argument regarding the prosecution's motion for mandatory minimum sentence occurred during the following colloquy with the circuit court:

[DPA]: ... The Court is aware of the facts in this case, having heard the jury-waived trial. So I will not talk about them. However—

THE COURT: Jury-waived trial?

[DPA]: Excuse me. Trial in this case on January 27, 1987, Your Honor.

THE COURT: This case was a—

[DEFENSE COUNSEL]: It was a jury-waived bench trial.

THE COURT: Jury-waived bench trial. That is correct. That is correct.

Court made findings of fact and law in this trial.

[DPA]: That's correct, Your Honor. Therefore, the Court is well [sic] that *this case is* not one which is *a* spur of the moment type of *robbery....* Instead, the evidence in this case established basically that *it was a planned and premeditated act* by [Schroeder]....

. . . .

Your Honor, based upon the fact, the nature of his apprehension, the credit cards, the receipt for the gun, the fact that the gun was used in this case, the fact that *it was a planned [and] premeditated offense,* [Schroeder] did essentially kidnap,

and kidnapping was charged as a class A felony, [Schroeder] is deserving of ... *mandatory 10 years for the use of the handgun....*

. . . .

Your Honor, the State has no more to add.

*Id.* at 16–19 (emphasis added).

At the close of argument, the circuit court made the following oral ruling on the prosecution's motion:

THE COURT: The Court has had the benefit now of hearing arguments on the motion[ ] as well as on sentencing itself, both matters having been consolidated.

. . . .

... So far as the motion for mandatory *term* of imprisonment is concerned, Mr. Schroeder, it may have been that you acted stupidly, and as you said, in this Court they should have charged you with stupidity. But, of course, there is no such offense.

However, your stupidity, as you have termed it, in the eyes of society and the community and those who are injured by *your act,* constitutes more than that. It constitutes a threat and menace to society. And the Court looks upon it as just that. Looks upon your *action* as that. Accordingly, the Court is going to give you *a mandatory term of imprisonment.* Accordingly, the Court will order mandatory term of imprisonment *in each, all to run concurrently,* mittus [sic] to issue forthwith.

*Id.* at 21–22 (emphasis added).

The circuit court's written judgment, entered on March 25, 1987, convicted Schroeder of the offenses of robbery in the first degree and kidnapping and sentenced Schroeder to: (1) two concurrent indeterminate prison terms of twenty years; *see* HRS § 706–659 (1985);[6] and (2) two concurrent mandatory minimum prison terms of ten years pursuant to HRS § 706–660.1(a).

---

6. HRS § 706–659 (1985) provides in relevant part that "a person who has been convicted of a class A felony shall be sentenced to an indeterminate term of imprisonment of twenty years without possibility of suspension of sentence or probation."

Schroeder appealed his convictions on April 20, 1987. On July 15, 1987, Schroeder filed a motion for reduction of his sentence, which the circuit court denied. The ICA affirmed the convictions in a memorandum opinion filed on October 6, 1988, 7 Haw.App. 664, 807 P.2d 52 (No. 12142).

On July 6, 1989, Schroeder, acting *pro se,* filed a motion to correct illegal sentence pursuant to Hawai'i Rules of Penal Procedure (HRPP) 35 (1985),[7] alleging numerous grounds in support. The circuit court denied the motion on April 26, 1991. In his written order, the circuit court entered, *inter alia,* the following "conclusions of law" (COLs) [8] in support of his order:

4. [Schroeder] asserts that his sentence was illegal because the Court sentenced him to two mandatory minimum terms of ten years under the statute [*i.e.,* HRS § 706–660.1(a) ]. The Court finds that [Schroeder] was convicted of two felonies, Robbery in the First Degree and Kidnapping; that a firearm was used in the carrying out of the respective offenses; and, that the complaining witness was restrained and not released unharmed. Specifically the Court finds that *the offenses arose from a single occurrence which involved both the Robbery and Kidnapping and the language of the indictment is clear and intelligible.*

5. As previously stated, at the time [Schroeder] was sentenced, the Court had for consideration [Schroeder's] letter and other materials which [Schroeder] had submitted to the Court for consideration. The Court also considered the evidence which was adduced at trial. Accordingly, the Court finds that the Court did consider all available material incident to the character and circumstances of [Schroeder], the need for the sentences imposed, the available sentencing schemes, and the need to avoid unwarranted sentencing disparities. The Court finds that based upon its consideration, the Court found that *the seriousness of the nature of the crimes required the*

*mandatory minimum sentence of ten years for each count.*

(Emphasis added.)

Schroeder filed a timely appeal, and the matter was assigned to the ICA.

On appeal, Schroeder argued that: (1) his entire sentence was illegal because the circuit court was not provided with a report of a "pre-sentence correctional diagnosis" as required by HRS § 706–601 (1985 & Supp. 1992); (2) the mandatory minimum sentence imposed in connection with the kidnapping conviction was illegal because (a) the indictment did not give him notice of the possibility of its imposition, and (b) at sentencing, the circuit court did not find beyond a reasonable doubt that Schroeder had used or threatened to use a firearm while committing a felony; and (3) the circuit court erred in not ordering and considering a pre-sentence correctional diagnosis and report before ruling on his motion for a reduction of the sentence.

In its decision, the ICA rejected the first and third of Schroeder's alleged errors on the basis that "the material presented to the [circuit] court provided sufficient information for the [circuit] court to make a reasoned judgment on the proper sentence to be imposed for [Schroeder's] convictions. The pre-sentence report sufficiently complied with HRS § 706–602 [Supp.1992], and HRS chapter 706 was not violated." *Schroeder,* 880 P.2d at 210 (footnote omitted). That portion of the ICA's decision is not before us, and, in any event, we agree with it. Thus, as we have noted, the ICA affirmed the circuit court's denial of Schroeder's HRPP 35 motion except with respect to the mandatory minimum prison term imposed in connection with the kidnapping conviction (Schroeder's second point of error on appeal), as to which the ICA remanded to the circuit court with instructions to vacate that portion of Schroeder's sentence. *Id.* at 213.

It is the ICA's disposition of Schroeder's second point of error on appeal that constitutes the basis of the prosecution's application for a writ of certiorari and that we now consider.

---

7. HRPP 35 (1985) provides, *inter alia,* that an illegal sentence may be corrected at any time.

8. Actually, most of the verbiage contained in the circuit court's COL Nos. 4 and 5 involved findings of fact. Only the portions emphasized above constituted true conclusions of law.

## II. STANDARD OF REVIEW

" 'A COL is not binding upon an appellate court and is freely reviewable for its correctness.' " *AIG Hawaii Ins. Co. v. Estate of Caraang*, 74 Haw. 620, 628, 851 P.2d 321, 326 (1993) (quoting *Amfac, Inc. [v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 119, 839 P.2d 10, 28, *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992) ] ). This court ordinarily reviews COLs under the right/wrong standard. *In re Estate of Holt*, 75 Haw. 224, 232, 857 P.2d 1355, 1359, *reconsideration denied*, 75 Haw. ——, 863 P.2d 989 (1993) (citation omitted). Thus, " '[a] COL that is supported by the trial court's [findings of fact] and that reflects an application of the correct rule of law will not be overturned.' " *Estate of Caraang*, 74 Haw. at 628–29, 851 P.2d at 326 (quoting *Amfac, Inc.*, 74 Haw. at 119, 839 P.2d at 29).

*State v. Furutani*, 76 Hawai'i 172, 180, 873 P.2d 51, 59 (1994).

## III. DISCUSSION

### A. The ICA's Rationale

The analysis by which the ICA deemed itself compelled to reverse the circuit court's imposition of a mandatory minimum prison term in connection with Schroeder's kidnapping conviction in this case is set forth in its opinion as follows:

Citing *State v. Estrada*, 69 Haw. 204, 738 P.2d 812 (1987), and *State v. Apao*, 59 Haw. 625, 586 P.2d 250 (1978), [Schroeder] argues that the mandatory minimum sentence imposed for [the kidnapping conviction] was illegal because the indictment did not give him fair notice that the charge against him included the use of a handgun, and [the circuit court] did not find beyond a reasonable doubt that a handgun was used in committing the offenses.

. . . .

[In *Estrada*, ] [t]he supreme court stated:

*Apao* required a defendant to have "fair notice of the charges against" him: the aggravating circumstances must be *alleged in the indictment and found by the jury.*

. . . .

*Estrada*, 69 Haw. at 230, 738 P.2d at 829 (emphasis in original and citations omitted).

. . . .

[In *Apao,* ] [t]he supreme court stated that

the better rule is to include in the indictment the allegations which, if proved, would result in application of a statute enhancing the penalty for the crime committed. This will give defendants fair notice of the charges against them.

*Apao*, 59 Haw. at 636, 586 P.2d at 258 (footnote omitted).

*Estrada* went beyond *Apao* and established an unequivocal rule: a defendant may not be given an enhanced sentence on account of aggravating circumstances pursuant to a statute providing therefor unless the aggravating circumstances are alleged in the complaint or indictment, and the statute's applicability has been determined by the trier of fact.

However, the [prosecution] correctly points out that in *State v. Guerrios*, 7 Haw.App. 424, 774 P.2d 246 (1989), we held that under HRS § 706–660.1(a) the finding that the defendant used a firearm in committing a felony did not have to be made by the jury; the finding could be made by the sentencing judge. *Guerrios* applied the two-step process set forth in *State v. Huelsman*, 60 Haw. 71, 588 P.2d 394 (1978), where the supreme court held that in imposing an extended prison term under 706–662,[9] the sentencing court must find (1) beyond a reasonable doubt that the defendant is within the class of offenders to which the statute applies; and (2) in accordance with the requirements of ordinary sentencing, that the extended term of imprisonment is necessary for the public's protection.

In *Estrada*, the supreme court marked the divergence of *Estrada* and *Huelsman*

---

9. HRS § 706–662 (Supp.1992) delineates the "criteria for extended terms of imprisonment" that may, in the sentencing court's discretion, be imposed upon "persistent offenders," "professional criminals," "dangerous persons," "multiple offenders," and offenders against the elder, handicapped, or minors.

when it noted that *Huelsman* established "different procedures for sentencing under the multiple offender statutes, HRS §§ 706–662 (1985) and 706–664 (1985)." [10] *Estrada,* 69 Haw. at 230, 738 P.2d at 829. However, the supreme court did not state the reasons for the difference.

In our view, the difference is based on the nature of the aggravating circumstances in the two statutes. In *Huelsman,* the supreme court stated:

> The determination that the defendant is a member of the class of offenders to which the particular subsection of § 662 applies involves "historical facts", the proof of which exposes the defendant to punishment by an extended term sentence, similarly to the manner in which the proof of his guilt exposes him to ordinary sentencing."

*Id.,* 60 Haw. at 79, 588 P.2d at 400.

In contrast, the aggravating circumstances of HRS § 706–660.1 were considered by the supreme court in *Estrada* as so enmeshed in the commission of the crime charged that the court stated that those facts *must* be alleged in the indictment in order to give the defendant notice that they will be relied on to prove the defendant's guilt and support the sentence to be imposed, and they must be determined by the trier of fact.

The aggravating circumstances in *Guerrios,* i.e., that a firearm was used in committing a felony, was the type of aggravating circumstance so enmeshed in the commission of the charged offense that it was required to be found by the jury, as in *Estrada.* In *Guerrios,* we erroneously followed *Huelsman* rather than *Estrada.* Consequently, to the extent that *Guerrios* is contrary to the opinion we render here, *Guerrios* is overruled.

In this case, also, it is clear that the use of a handgun was a fact enmeshed in the kidnapping. Consequently, *Estrada* applies. The aggravating circumstance should have been alleged in the indictment and determined by the trier of fact. Since the aggravating circumstance was not alleged in the indictment, the mandatory minimum sentence was illegally imposed and must be vacated.

*Schroeder,* 880 P.2d at 211–12 (emphasis in original and footnotes omitted).

In the context of the ICA's analysis, we are aware that it is axiomatic in the Anglo–American system of jurisprudence—"deeply rooted" in the "principle of judicial analogy"—that "our judges are governed by precedents of interpretation." C.K. Allen, *Law in the Making* 108 (1927). Consistent with this truism, the lower courts of our state, both trial and appellate, are called upon to perform their functions in harmony with the existing case law developed over time by this court. It is a fact of life, however, that in retrospect our pronouncements are sometimes more enigmatic than we would wish. In undertaking to decipher such controlling but oracular propositions, the lower courts have no choice but to apply the law as they understand it to be. Although the appeal before us today presents just such a case, it at least accords us the opportunity both to clarify and elaborate upon what we believe we meant to say in the past.

B. *The Threatened Use Of A Firearm While Engaged In The Commission Of A Felony Was Alleged By Clear Implication In The Kidnapping Count Of The Indictment Against Schroeder And Found At Trial By The Trier of Fact.*

1. *Development of the "Estrada rule"*

In *State v. Apao, supra,* the defendant (Apao) was indicted for the murder of Faa-

---

10. HRS § 706–664 (Supp.1992) provides:

**Procedure for imposing extended terms of imprisonment.** Hearings to determine the grounds for imposing extended terms of imprisonment may be initiated by the prosecutor or by the court on its own motion. The court shall not impose an extended term unless the ground therefor has been established *at a hearing after the conviction of the defendant and on written notice to the defendant of the ground proposed.* Subject to the provisions of section 706–604, the defendant shall have the right to hear and controvert the evidence against the defendant and to offer evidence upon the issue. (Emphasis added.)

HRS § 706–604 (Supp.1992) generally affords defendants a fair opportunity to be heard with respect to their sentences and entitles them to copies of pre-sentence, psychological, psychiatric, and medical reports, as well as an opportunity to controvert or supplement them.

fouina Tuaolo. At the time of the alleged offense, the governing statute was HRS § 707–701 (1985), which provided:

> **Murder.** (1) Except as provided in section 707–702,[11] a person commits the offense of murder if he intentionally or knowingly causes the death of another person.
>
> (2) Murder is a class A felony for which the defendant shall be sentenced to imprisonment as provided in section 706–606.

HRS § 706–606 (1985) [12] provided in relevant part:

> **Sentence for offense of murder.** The court shall sentence a person who has been convicted of murder to an indeterminate term of imprisonment. In such cases the court shall impose the maximum length of imprisonment as follows:
>
> (a) Life imprisonment *without possibility of parole* in the murder of:
>
> . . . .
>
> (ii) A person known by the defendant to be a witness in a murder prosecution[.]
>
> . . . .
>
> (b) Life imprisonment *with possibility of parole* in all other cases. . . .

(Emphasis added.) The single-count indictment charged Apao as follows:

> On or about the 20th day of July, 1974, in the City and County of Honolulu, State of [Hawai‘i], ROY AIU APAO did intentionally or knowingly cause the death of Faafouina Tuaolo, a person known by Roy Aiu Apao *to be a witness in a murder* prosecution, by beating the said Faafouina Tuaolo, thereby committing the offense of

murder in violation of Section 701 and 606(a)(ii) of the [Hawai‘i] Penal Code. . . .

59 Haw. at 627, 586 P.2d at 253.

Prior to trial, Apao moved to dismiss the indictment on the grounds that his knowledge of the victim's status as a witness in a murder prosecution was not an element of the offense of murder and, therefore, the wording of the indictment "was inflammatory and prejudicial, destroyed the presumption of [his] innocence in the eyes of the grand jury, and denied him a fair hearing" in violation of the due process clauses of the United States and Hawai‘i Constitutions. *Id.* at 633, 586 P.2d at 257. The circuit court denied the motion, and a jury ultimately found Apao guilty of murder. Apao was sentenced to life imprisonment without the possibility of parole, pursuant to HRS § 706–606(a)(ii).

On appeal, Apao urged, *inter alia,* that the circuit court had erred in denying his motion to dismiss the indictment, again insisting that inclusion of language in the indictment extraneous to the elements of the offense of murder had prejudiced the grand jury against him. This court disagreed, expressing the view that the inclusion of the phrase "a person known by ... Apao to be a witness in a murder prosecution" had actually redounded to Apao's benefit:

> We acknowledge that due process requires that an indictment contain all the essential elements of the offense charged, and [the] "omission of an essential element of the crime charged is a defect in substance rather than of form." *State v. Jendrusch,* 58 Haw. 279, 567 P.2d 1242 (1977).

---

11. HRS § 707–702(2) (1985) provided:
   In a prosecution for murder it is a defense, which reduces the offense to manslaughter, that the defendant was, at the time he caused the death of the other person, under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation. The reasonableness of the explanation shall be determined from the viewpoint of a person in the defendant's situation under the circumstances as he believed them to be.
   HRS § 707–702(2) was amended in 1987, one year after the legislature created a statutory distinction between murder in the first and second degrees. *See* Act 181, § 8, 1987 Haw.Sess.Laws 407, 410–11.

12. Act 314, § 15, 1986 Haw.Sess.Laws 593, 599–600, deleted the provisions from HRS § 706–606 that concerned sentencing for murder and replaced them with criteria to be considered by a court in imposing any sentence, including the need to afford deterrence to criminal conduct and to impose just punishment. *See* supplemental commentary on HRS § 706–606 (Supp.1992). Section 39 of Act 314 added a new section to HRS ch. 706, later codified as HRS § 706–656, that prescribed the "[terms] of imprisonment for first and second degree murder and attempted first and second degree murder." Act 314, § 39, 1986 Haw.Sess.Laws 593, 611.

In *State v. Frazier*, 81 Wash.2d 628, 503 P.2d 1073 (1972), however, the Washington supreme court held that the defendant was deprived of procedural due process when the information *failed* to allege specific acts which, if proved, would bring the defendant under the statutes imposing additional penalties. The court said 503 P.2d at 1077:

> Where a factor aggravates an offense and causes the defendant to be subject to a greater punishment than would otherwise be imposed, due process requires that the issue of whether that factor is present[ ] must be presented to the jury upon proper allegations and a verdict thereon rendered before the court can impose the harsher penalty....
>
> ....
>
> The inclusion of this separate issue in the information and verdict will give the [defendant] notice prior to trial that, if convicted, and if the jury finds the facts causing the aggravation are correct, [the defendant] will have no possibility of probation.

Other jurisdictions have held that aggravating circumstances must be charged in the indictment in order for an enhanced penalty to be imposed.

> In our opinion, the better rule is to include in the indictment the allegations, which if proved, would result in application of a statute enhancing the penalty for the crime committed.[13] This will give defendants fair notice of the charges against them....
>
> We, therefore, conclude that the indictment in this case clearly stated all the essential elements of the crime of murder, and properly included the allegations that the [defendant] knew that the victim was a witness in a prior murder prosecution.

*Id.*, 59 Haw. at 634–36, 586 P.2d at 257–58 (emphasis in original) (citations and footnotes omitted).

In *State v. Estrada, supra,* the defendant (Estrada) was charged in a single-count complaint with the attempted murder of a Maui County police officer. A jury convicted Estrada of the offense, and the prosecution moved for the imposition of an indeterminate term of life imprisonment without the possibility of parole, pursuant to HRS § 706–606.1(1)(a) (1985),[14] on the ground that "Es-

*State v. Bernades*, 71 Haw. 485, 489, 795 P.2d 842, 844 (1990) (citations omitted).

Nevertheless, the *Apao* court's citation of *State v. Frazier*, 81 Wash.2d 628, 503 P.2d 1073 (1972), which involved the statutory application of aggravating factors in such a way as to deprive a defendant of the possibility of *probation*, as authority in support of "the better rule" would seem to suggest that the *Apao* court intended to include sentencing statutes providing for mandatory minimum prison terms within the ambit of "the better rule." We perceive no good reason to depart from *Apao* in this regard.

---

13. A plausible argument could be made that application of HRS § 706–660.1(a)(1) to Schroeder's convictions in no way "enhances" the penalties for the offenses he committed. "Enhanced" is defined to mean "made greater" and is deemed to be synonymous with "increased." *Black's Law Dictionary* 529 (6th ed. 1990). Construed in this light, "enhanced" sentences are more akin to "extended" terms of imprisonment, for which provision is made in HRS §§ 706–661 (1985), 706–662, and 706–664 and to which, ironically, "the better rule" does not apply (*see* section III.B.2., *infra* ), than to mandatory minimum prison terms. After all, when a defendant is convicted of a class A felony,

> the State thereby [acquires] the right to control 20 years of [the defendant's] life. HRS § 706–660.1(a)[ (1) ] does not in any way *increase* the State's right to control [the defendant's] life. All it does is specify the mandatory imprisonment the sentencing judge may impose on him for up to 10 of those 20 years if he possessed, used, or threatened to use a firearm while engaged in the commission of the class A felony for which he is being sentenced.

*State v. Guerrios*, 7 Haw.App. 424, 429–30, 774 P.2d 246, 250 (1989) (emphasis added). The *Guerrios* proposition is merely a corollary of the facts that: (1) "historically probation has been a matter of grace or privilege"; and (2) "there is no constitutional right to receive probation[.]"

14. HRS § 706–606.1 (1985) provided in relevant part:

> **Sentence for offense of attempted murder.** The court shall sentence a person who has been convicted of attempted murder to an indeterminate term of imprisonment. In such cases the court shall impose the maximum length of imprisonment as follows:
>
> (1) Life imprisonment *without possibility of parole* in the attempted murder of:
>
> (a) A peace officer while in the performance of his duties[.]
>
> ....
>
> (2) Life imprisonment *with possibility of parole* in all other cases of attempted murder....

trada had been convicted for the attempted murder of a police officer who was acting in the line of duty." 69 Haw. at 212–13, 738 P.2d at 819. Estrada opposed the motion, arguing that, because the complaint against him had not alleged a violation of HRS § 706–606.1(1)(a) and the jury had not made a factual determination that the police officer was acting in the performance of his duties when the officer was shot, he had received insufficient notice of the prosecution's intent to seek "enhanced" sentencing to satisfy the requirements of due process. *Id.* at 213, 738 P.2d at 819–20. The circuit court granted the prosecution's motion, and Estrada was sentenced to life imprisonment without the possibility of parole. *Id.* at 213, 738 P.2d at 820.

On appeal, Estrada urged "that due process was violated when he was sentenced under HRS § 706–606.1(1)(a), although this statute was never raised until after the jury returned its guilty verdict, because 1) he never received notice; and 2) the jury should have decided whether the statute applied." *Id.* at 229–30, 738 P.2d at 829. The prosecution, on the other hand, contended that:

> 1) HRS § 706–606.1(1)(a) is merely a sentencing statute which [the sentencing court] could impose; 2) the undisputed facts [were] that [the police officer], in uniform while driving a marked police van on an official errand, was on duty when shot; and 3) Estrada had a fair hearing to argue against the enhanced sentencing.

*Id.* at 230, 738 P.2d at 829. Reversing the conviction, vacating the sentence, and remanding the matter for a new trial, this court resolved the dispute in favor of Estrada:

> We have held [that] the better rule is to include in the indictment the aggravating circumstances which, *if proved*, would result in the application of [the] enhanced sentencing [provisions] of HRS § 706–606 (1985). *State v. Apao*, 59 Haw. 625, 586 P.2d 250 (1978).... The only difference between HRS §§ 706–606 and 705–606.1 is that the former is for murder sentencing

whereas the latter is for attempted murder sentencing. *Apao* thus applies to both statutes. *Apao* required a defendant to have "fair notice of the charges against" him: the aggravating circumstances must be *alleged in the indictment and found by the jury* [, *i.e.*, the trier of fact]. 59 Haw. at 635–36, 586 P.2d at 258.

*Id.* (emphasis in original).

Thus, this court transformed "the better rule" as articulated in *Apao* into what the ICA has accurately characterized as the "unequivocal" rule established in *Estrada*. *See Schroeder*, 880 P.2d at 212.

### 2. Development of the "Huelsman rule"

Forty-one days after *Apao*, and without any reference to it, this court rendered its decision in *State v. Huelsman*, 60 Haw. 71, 588 P.2d 394 (1978), *reh'g denied*, 60 Haw. 308, 588 P.2d 407 (1979). In substance, the *Huelsman* decision addressed the procedural protections to be accorded criminal defendants at sentencing in the imposition of extended terms of imprisonment, pursuant to HRS §§ 706–661, 706–662, and 706–664.[15] In so doing, the *Huelsman* court fashioned the following rule:

> Each of the subsections of [HRS] § 706–662 requires the trial court to engage in a two-step process to impose a sentence for an extended term. The first step involves a finding by the court that the defendant is within the class of offenders to which the particular subsection applies. Thus subsection (1) requires a finding that the defendant is a persistent offender.... Subsection (2) requires a finding that the defendant is a professional criminal.... Subsection (3) requires a finding that the defendant is a dangerous person.... Subsection (4) requires a finding that the defendant is a multiple offender.... Subsection (5) ... requires a finding that the

(Emphasis added.) HRS § 706–606.1 was repealed in 1986, Act 314, § 16, Haw. Sess. Laws 593, 600, and replaced by HRS § 706–656, as subsequently amended. Act 314, § 39, 1986 Haw.Sess.Laws 593, 611; Act 181, § 6, 1987

Haw.Sess.Laws 407, 410; Act 211, § 8, 1989 Haw.Sess.Laws 431, 434.

**15.** *See supra* notes 9, 10, and 13.

defendant is an offender against the elderly or handicapped [16] . . . .

After the first step of this process has been completed and the defendant has been found by the court to be within the class of offenders specified by the particular subsection, the court must determine, under subsections (1), (2), (3) and (5), that the defendant's commitment for an extended term is necessary for the protection of the public. The corresponding requirement in subsection (4) is phrased somewhat differently as calling for a finding that the defendant's "criminality was so extensive that a sentence of imprisonment for an extended term is warranted." [17]

HRS § 706–664 requires a hearing on notice to the defendant as a prerequisite to imposition of a sentence of imprisonment for an extended term . . . .

. . . .

. . . The determination that the defendant is a member of the class of offenders to which the particular subsection of § 662 applies involves "historical facts", the proof of which exposes the defendant to punishment by an extended term sentence, similarly to the manner in which the proof of his guilt exposes him to ordinary sentencing.[18] . . . The procedural standards to which the second phrase of an extended term sentence proceeding should be subject are those applicable to ordinary sentencing.

*Id.* at 76–77, 79–80, 588 P.2d at 398–400.

For present purposes, two aspects of the *Huelsman* rule are significant. First, the "historical facts" pertinent to the imposition of extended prison terms pursuant to HRS § 706–662 are to be found by the sentencing court *after* the defendant's adjudication of guilt at trial by the trier of fact. Second, this particular fact-finding process is wholly independent of the allegation of any foundational "aggravating circumstances" in the indictment or complaint containing the charges against the defendant. *See Oyler v. Boles,* 368 U.S. 448, 452, 82 S.Ct. 501, 503, 7 L.Ed.2d 446 (1962). This is precisely why *Apao,* which did not involve HRS § 706–662 extended term sentencing, received no mention in *Huelsman* and why the *Estrada* court construed *Huelsman* as recognizing that such extended term sentencing was subject to "different procedures" than those applicable to other forms of "enhanced" sentencing. *See Estrada,* 69 Haw. at 230, 738 P.2d at 829.

In short, the *Huelsman* rule is limited to enhanced sentencing, such as extended prison terms pursuant to HRS §§ 706–661, 706–662, and 706–664, in which the "determination that the defendant is a member of the class of offenders to which the particular [statute] applies involves 'historical facts.' " *Huelsman,* 60 Haw. at 79, 588 P.2d at 400. This is because such "historical facts" are wholly *extrinsic* to the specific circumstances of the defendant's offenses and therefore have no bearing on the issue of guilt *per se.* By contrast, if the "aggravating circumstances" justifying the imposition of an enhanced sentence are "enmeshed in," or, put differently, *intrinsic* to the "commission of the crime charged," then, in accordance with the *Estrada* rule, such aggravating circumstances "*must* be alleged in the indictment in order to give the defendant notice that they will be relied on to prove the defendant's guilt and support the sentence to be imposed, and they must be determined by the trier of fact." *Schroeder,* 880 P.2d at 212–13 (emphasis in original).

### 3. *Application of the "Estrada rule" to the present case*

■ We agree with the ICA that "it is clear that the use of a handgun was a fact

---

**16.** Subsection (5) has subsequently been amended to encompass offenses against minors under the age of eight. HRS § 706–662(5) (Supp. 1992).

**17.** As amended, subsection (4) now calls for a finding that the defendant's "criminal actions were so extensive that a sentence of imprisonment for an extended term is necessary for protection of the public." HRS § 706–662(4) (Supp.1992).

**18.** "Hence, these facts must be established by proof beyond a reasonable doubt in a hearing where the ordinary rules of evidence apply." *State v. Morishige,* 65 Haw. 354, 367, 652 P.2d 1119, 1129, *reconsideration denied,* 65 Haw. 682, 652 P.2d 1119 (1982) (citing *State v. Kamae,* 56 Haw. 628, 635–38, 548 P.2d 632, 637–38 (1976)) (footnote omitted).

enmeshed in the kidnapping" charge against Schroeder (*i.e.*, Count II) and that "[consequently], *Estrada* applies." *Schroeder*, 880 P.2d at 212. Accordingly, the question becomes whether the ICA correctly vacated Schroeder's mandatory minimum prison term of ten years in connection with Count II on the basis that the sentence violated the *Estrada* rule, inasmuch as, in the ICA's view, "the aggravating circumstance [*i.e.*, the use of a handgun] should have been alleged in the indictment and determined by the trier of fact" and that because "the aggravating circumstance was not alleged in the indictment, the mandatory minimum sentence was illegally imposed and must be vacated." *Id.* (footnote omitted). In our view, the ICA misapplied the *Estrada* rule for a number of reasons.

■ First, we note that Schroeder has never disputed the sufficiency of either of the charges as set forth in the indictment against him. We have held that charges will not be found to be defective where the record demonstrates that they tracked the relevant statutory language and that the defendant clearly understood the accusations and mounted a viable defense at trial. *State v. Cadus*, 70 Haw. 314, 318–19, 769 P.2d 1105, 1108–09 (1989). Put differently, where " 'the statute sets forth with reasonable clarity all essential elements of the crime intended to be punished, and fully defines the offense in unmistakable terms readily comprehensible to persons of common understanding, a charge drawn in the language of the statute is sufficient.' " *State v. Torres*, 66 Haw. 281, 288–89, 660 P.2d 522, 527 (1983) (quoting *Jendrusch*, 58 Haw. at 283, 567 P.2d at 1245). Counts I and II of the indictment in the present case obviously satisfy the prescribed criteria, and our review of the record establishes that Schroeder understood the accusations and mounted a viable defense at trial.

Second, Schroeder has never challenged the sufficiency of the evidence to support his robbery and kidnapping convictions. Both convictions were clearly supported by substantial evidence. *See State v. Batson*, 73 Haw. 236, 248–49, 831 P.2d 924, 931, *reconsideration denied*, 73 Haw. 625, 834 P.2d 1315 (1992).

Third, Schroeder has not alleged that, pursuant to HRS § 701–109 (1985),[19] he could not be tried and convicted of both robbery (Count I) and kidnapping (Count II). In this connection, the ICA has ruled that:

Unquestionably, a kidnapping that is necessarily and incidentally committed during a robbery cannot be the basis of a charge of kidnapping in addition to a charge of robbery. That is so because crimes involving the same facts are included offenses. *See* HRS § 701–109(4)(a). Conversely, a kidnapping that was not necessarily and incidentally committed during a robbery may be charged as a separate offense in addition to the robbery charge. Here, there is substantial evidence in the record that ... [the defendant's] acts of kidnapping extended beyond the acts of kidnapping that he necessarily and incidentally committed during the robbery.

*State v. Correa*, 5 Haw.App. 644, 649, 706 P.2d 1321, 1325 (1985). As we have noted, the circuit court judge, who was the trier of fact at Schroeder's trial, entered a written finding of fact on October 20, 1988 that "[Schroeder] held the paymaster of an interisland cruise ship at gunpoint, tied him up, stole approximately $40,000.00 from the ship's safe, and fled from law enforcement

---

19. HRS § 701–109 (1985) provides in relevant part:

**Method of prosecution when conduct establishes an element of more than one offense.** (1) When the same conduct of a defendant may establish an element of more than one offense, the defendant may be prosecuted for each offense of which such conduct is an element. [The defendant] may not, however, be convicted of more than one offense if:
 (a) One offense is included in the other, as defined in subsection (4) of this section; or
 . . . .

(e) The offense is defined as a continuing course of conduct and the defendant's course of conduct was uninterrupted, unless the law provides that specific periods of conduct constitute separate offenses.
 . . . .
 (4) A defendant may be convicted of an offense included in an offense charged in the indictment or the information. An offense is so included when:
 (a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged[.]

officials. . . ." *See supra* note 4. It was Schroeder's act of holding Richards at gunpoint in order to steal the cash from the ship's safe that supported the allegation contained in the robbery count that "while in the course of committing theft, and while armed with a dangerous instrument, to wit, a handgun, [Schroeder] did threaten the imminent use of force against . . . Richards, . . . with the intent to compel acquiescence to the taking of the property[.]" On the other hand, it was Schroeder's act of tying Richards up that supported the allegation contained in the kidnapping count that Schroeder "did intentionally restrain . . . Richards with intent to facilitate the commission of a felony or flight after the commission of a felony[.]" Insofar as the latter "extended beyond the acts of kidnapping that he necessarily and incidentally committed during the [robbery]," *see Correa,* 5 Haw.App. at 649, 706 P.2d at 1325, Schroeder could be convicted of both offenses.

■ Fourth, and most importantly, we emphasize that the ultimate objective of the *Estrada* rule is to ensure that "a defendant . . . have fair notice of the charges against him" or her. *Estrada,* 69 Haw. at 230, 738 P.2d at 829 (internal quotation marks deleted). With this objective in mind, an indictment must be read in a common-sensical fashion in order to ascertain whether the material aggravating circumstance has been sufficiently alleged therein to support the imposition of enhanced sentencing.

We are convinced that a plain reading of the kidnapping count of the indictment against Schroeder must result in a conclusion that the use of a handgun—*i.e.,* the relevant aggravating circumstance supporting the imposition of enhanced sentencing—*was* being charged. As we have noted, Count I of the indictment expressly alleged that Schroeder committed the offense of robbery "while in the course of committing theft [ ] and while armed with a dangerous instrument, to wit, a handgun. . . ." Count I alleged that robbery was committed (1) on April 13, 1985, (2) in the City and County of Honolulu, (3) by Schroeder, and (4) through the use of the

threat of imminent use of force against Richards while armed with a handgun.

Count II alleged that kidnapping was committed (1) on April 13, 1985, (2) in the City and County of Honolulu, (3) by Schroeder, (4) through the intentional restraint of Richards, and (5) with intent to facilitate the commission of a *felony* or flight after the commission of a *felony.* The "felony" referred to in Count II must reasonably be construed as the robbery charged in Count I.[20]

Moreover, as the ICA recognized, "[s]ince Count I alleges the use of a handgun, the guilty verdict was a finding beyond a reasonable doubt that the aggravating circumstance existed." *Schroeder,* 880 P.2d at 210 n. 8. That being the case, and the "felony" alleged in Count II being the offense of robbery charged in Count I, it necessarily follows that the guilty verdict in Count II likewise constituted a finding beyond a reasonable doubt that the same aggravating circumstance "existed."

Accordingly, we hold that the ICA erred in determining that the use of a handgun was not alleged in the kidnapping count of the indictment against Schroeder. We further hold that the use of a handgun was found beyond a reasonable doubt by the trier of fact. As will be demonstrated below, however, our preliminary holdings are not dispositive of the outcome of the present appeal and therefore do not end the inquiry.

C. *The Circuit Court Committed Plain Error When It Sentenced Schroeder To A Mandatory Minimum Term Of Imprisonment In Connection With The Kidnapping Count Of The Indictment Without Giving Him Reasonable Notice And An Opportunity To Be Heard.*

■ As we have noted, the circuit court relied on HRS § 706–660.1(a) in sentencing Schroeder to two concurrent mandatory minimum prison terms of ten years in connection with Schroeder's robbery and kidnapping convictions. In this respect, HRS § 706–660.1 is analogous to the "repeat offender"

**20.** Nevertheless, we acknowledge that the better practice would have been to modify the word

"felony" in Count II with the phrase "to wit, robbery, as charged in Count I."

statute, HRS § 706–606.5 (1985 & Supp. 1992),[21] which likewise subjects certain convicted defendants to mandatory minimum terms of imprisonment.

Citing, *inter alia, Oyler v. Boles, supra,* we have held that due process requires that a defendant sentenced under the repeat offender statute "be given reasonable notice and afforded the opportunity to be heard." *State v. Freitas,* 61 Haw. 262, 277, 602 P.2d 914, 925 (1979) (other citations omitted); *see also State v. Caldeira,* 61 Haw. 285, 289, 602 P.2d 930, 933 (1979) ("[A] defendant must be advised within a reasonable time of the intended application of [the repeat offender statute].") (citations omitted).

> The purpose of notice is to insure that interested parties are apprised of the pendency of any proceeding which is to be accorded finality. *Freitas v. Gomes,* 52 Haw. 145, 472 P.2d 494 (1970). Given notice, parties are able to determine how to respond and prepare for the issues involved in the hearing. *Oyler v. Boles,* [*supra* ].

*State v. Melear,* 63 Haw. 488, 499, 630 P.2d 619, 627–28 (1981).

In *State v. Morishige,* 65 Haw. 354, 652 P.2d 1119, *reconsideration denied,* 65 Haw. 682, 652 P.2d 1119 (1982), we analogized HRS § 706–606.5, the repeat offender stat-

ute, to HRS § 706–660.1 and deemed the latter to be subject to the same "procedural demands." *Id.* at 368, 652 P.2d at 1129. Accordingly, before a defendant may be sentenced to a mandatory minimum term of imprisonment pursuant to HRS § 706–660.1, due process requires that he or she must likewise be given reasonable notice of its intended application and afforded the opportunity to be heard.

As illustrated in section I of this opinion, after the circuit court adjudicated Schroeder guilty of robbery in the first degree and kidnapping: (1) the prosecution filed a timely motion for imposition of "a mandatory term of imprisonment of ten (10) years" (singular); (2) the prosecution's supporting affidavit based its request for "a mandatory term" on the "facts in the above-captioned offense" (singular); (3) at the sentencing hearing, defense counsel directed his remarks regarding the prosecution's motion to "the commission of the offense with a firearm," and "the commission of the crime [and] how it was committed" (singular); and (4) at the same hearing, the DPA urged that the motion be granted in light of the facts that "this case [was] not one which [was] a spur of the moment type of robbery" but was rather "a planned [and] premeditated offense" (singular).[22]

---

**21.** HRS § 706–606.5 (1985) provided in relevant part:

> **Sentencing of repeat offenders.** (1) Notwithstanding section 706–669 and any other law to the contrary, any person convicted under section 707–701 relating to murder, 707–710 relating to assault in the first degree, *707–720 relating to kidnapping,* 707–724 relating to criminal coercion involving dangerous weapons, 707–730 relating to rape in the first degree, 707–733 relating to sodomy in the first degree, 707–768 relating to extortion involving dangerous weapons, 708–810 relating to burglary in the first degree, *708–840 relating to robbery in the first degree,* 712–1241 relating to the promotion of a dangerous drug in the first degree, 712–1242 relating to the promotion of a dangerous drug in the second degree, or 712–1244 relating to the promotion of a harmful drug in the first degree, who has a prior conviction for any of the above enumerated offenses or any of those enumerated in subsection two in this or another jurisdiction, within the time of the maximum sentence of the prior conviction, shall be sentenced for each convic-

tion after the first conviction to a mandatory minimum period of imprisonment without possibility of parole during such period....

> ....

> (3) The sentencing court may impose the above sentences consecutive to any other sentence then or previously imposed on the defendant or may impose a lesser mandatory minimum sentence without possibility of parole than that mandated by this section where the court finds that *strong mitigating circumstances warrant such action....* The court shall provide a written opinion or its reasons for imposing the lesser sentence.

(Emphasis added.)

HRS § 706–606.5 has been substantially amended. *See* HRS § 706–606.5 (Supp.1992). For present purposes, the material change is that the provisions of the repeat offender statute now apply to "any class A felony." HRS § 707–606.5(1) (Supp.1992).

**22.** In her argument before the circuit court, the DPA addressed the robbery and kidnapping counts as if they charged a single offense. *See supra* at 521, 880 P.2d at 196.

It is apparent to us that these events unequivocally establish that: (1) the prosecution sought the imposition of *one* mandatory minimum prison term; (2) defense counsel relied on that premise in fashioning his sentencing arguments; and (3) the prosecution's sentencing arguments not only failed to suggest a contrary premise, but rather reinforced its clear objective of obtaining *one* mandatory minimum prison. Nevertheless, the circuit court, *sua sponte,* ordered *two* concurrent mandatory minimum terms—one for each count of the indictment.

■■■ We are aware that Schroeder failed to raise the circuit court's *sua sponte* imposition of the second mandatory minimum prison sentence either in his July 6, 1989 motion to correct illegal sentence or in his opening brief on appeal.[23]

> Nevertheless, where plain error has been committed and substantial rights have been affected thereby, the error may be noticed even though it was not brought to the attention of the trial court. [*State v. Fox,* 70 Haw. 46,] 55, 760 P.2d [670,] 675 [ (1988) ]; *see also State v. Grindles,* 70 Haw. 528, 530, 777 P.2d 1187, 1189 (1989); *State v. Tiedemann,* 7 Haw.App. 631, 635, 790 P.2d 340, 342 (1990); [Hawai'i] Rules of Penal Procedure (HRPP) 52(b)[24] ....

*State v. Kelekolio,* 74 Haw. 479, 515, 849 P.2d 58, 75 (1993). Moreover, although points of error not raised on appeal in accordance with Hawai'i Rules of Appellate Procedure (HRAP) 28(b)(4) (1993) will ordinarily be disregarded, this court, at its option, may notice a plain error not presented. HRAP 28(b); *see also State v. McGriff,* 76 Haw. 148, 155, 871 P.2d 782, 789 (1994) (citations omitted).

We hold, pursuant to *Freitas, Caldeira,* and *Morishige,* that Schroeder had a right

---

under the due process clause, art. I, § 5, of the Hawai'i Constitution (1978) to be given reasonable notice of the circuit court's intention to apply HRS § 706–660.1(a) in sentencing him in connection with his kidnapping conviction and to be afforded the opportunity to be heard with respect thereto. We therefore hold, in the absence of such notice and opportunity to be heard, that the circuit court erred in imposing a mandatory minimum ten year term of imprisonment as an element of Schroeder's kidnapping sentence.[25] Finally, we hold that the imposition of the sentence amounted to plain error affecting Schroeder's substantial rights.

## IV. CONCLUSION

Although the ICA erroneously construed *Estrada* in holding that Schroeder's mandatory minimum sentence in connection with his kidnapping conviction was illegally imposed and must be vacated, "we must affirm the judgment if it is correct on any other legal ground." *Brooks v. Minn,* 73 Haw. 566, 576, 836 P.2d 1081, 1087 (1992) (citations omitted). Accordingly, because the circuit court committed plain error in imposing the sentence in the absence of reasonable notice and an opportunity to be heard, we affirm the judgment of the ICA remanding this matter to the circuit court with instructions to vacate the mandatory minimum sentence imposed in Count II. In all other respects, the circuit court's April 26, 1991 order denying Schroeder's motion to correct illegal sentence is affirmed.

---

**23.** Schroeder was acting *pro se* on both occasions.

**24.** HRPP 52(b) (1989), entitled "Plain Error," provides that "[plain] errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

**25.** Schroeder could have been sentenced, pursuant to HRS § 706–660.1(a), to concurrent mandatory minimum prison terms in connection with

his robbery and kidnapping convictions had he been accorded the proper notice and opportunity to be heard. *But cf. State v. Ambrosio,* 72 Haw. 496, 824 P.2d 107, *reconsideration denied,* 72 Haw. 616, 829 P.2d 859 (1992) (conviction of "possession of a firearm in the commission of a felony," in violation of HRS § 134–6(a) (Supp. 1992), itself a substantive offense, may not provide basis for compounding mandatory minimum sentences under HRS § 706–660.1).