129 P.3d 1107

STATE of Hawai'i, Plaintiff–Appellee,

v.

Wayde K. WHITE, Defendant–Appellant.

No. 27201.

Supreme Court of Hawai'i.

March 10, 2006.

Phyllis Hironaka, Deputy Public Defender, on the briefs, for the defendant-appellant Wayde K. White.

Daniel Shimizu, Deputy Prosecuting Attorney, on the briefs, for the plaintiff appellee State of Hawai'i.

MOON, C.J., LEVINSON and NAKAYAMA, JJ., and ACOBA, J., dissenting, with whom DUFFY, J., joins.

Opinion of the Court by LEVINSON, J.

The defendant-appellant Wayde K. White appeals from the judgment of the circuit court of the first circuit, the Honorable Derrick Chan presiding, filed on March 1, 2005, convicting him of and sentencing him for the following offenses: (1) two counts of forgery in the second degree in violation of Hawai'i Revised Statutes (HRS) 708–852 (Supp. 1997)[1] and (2) one count of theft in the second degree in violation of HRS § 708–831(1)(b) (Supp.1998).[2]

On appeal, White contends that the circuit court erred in sentencing him to extended terms of imprisonment as a "multiple offender" pursuant to HRS § 706–662(4)(a) (Supp. 2003),[3] inasmuch as the jury did not decide

1. HRS § 708–852 provides:

   **Forgery in the second degree.** (1) A person commits the offense of forgery in the second degree if, with intent to defraud, the person falsely makes, completes, endorses, or alters a written instrument, or utters a forged instrument, or fraudulently encodes the magnetic ink character recognition numbers, which is or purports to be, or which is calculated to become or to represent if completed, a deed, will, codicil, contract, assignment, commercial instrument, or other instrument which does or may evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status.

   (2) Forgery in the second degree is a class C felony.

2. HRS § 708–831 provides in relevant part:

   **Theft in the second degree.** (1) A person commits the offense of theft in the second degree if the person commits theft:
   . . . .
   (b) Of property or services the value of which exceeds $300;
   . . . .
   (2) Theft in the second degree is a class C felony. . . .

3. HRS § 706–662 provides in relevant part:

   **Criteria for extended terms of imprisonment.** A convicted defendant may be subject to an extended term of imprisonment under section 706–661, if the convicted defendant satisfies one or more of the following criteria:
   (1) The defendant is a persistent offender whose imprisonment for an extended term is necessary for protection of the public. The court shall not make this finding unless the defendant has previously been convicted of two felonies committed at different times when the defendant was eighteen years of age or older.
   . . . .
   (3) The defendant is a dangerous person whose imprisonment for an extended term is necessary for protection of the public. The court shall not make this finding unless the defendant has been subjected to a psychiatric or psychological evaluation that documents a significant history of dangerousness to others resulting in criminally violent conduct, and this history makes the defendant a serious danger to others. Nothing in this section precludes the introduction of victim-related data in order to establish dangerousness in accord with the Hawaii rules of evidence.
   (4) The defendant is a multiple offender whose criminal actions were so extensive that a sentence of imprisonment for an extended term is necessary for protection of the public. The court shall not make this finding unless:
   (a) The defendant is being sentenced for two or more felonies or is already under sentence of imprisonment for felony; or
   (b) The maximum terms of imprisonment authorized for each of the defendant's crimes, if made to run consecutively, would equal or exceed in length the maximum of the extended term imposed or would equal or exceed forty years if the extended term imposed is for a class A felony.
   (5) The defendant is an offender against the elderly, handicapped, or a minor under the age of eight, whose imprisonment for an extended term is necessary for the protection of the public. The court shall not make this finding unless:
   (a) The defendant attempts or commits any of the following crimes: murder, manslaughter, a sexual offense that constitutes a felony under chapter 707, robbery, felonious assault, burglary, or kidnapping; and
   (b) The defendant, in the course of committing or attempting to commit the crime, inflicts serious or substantial bodily injury upon a person who is:
   (i) Sixty years of age or older;
   (ii) Blind, a paraplegic, or a quadriplegic; or
   (iii) Eight years of age or younger; and

that such extended terms of imprisonment were necessary for the protection of the public, and, therefore, the extended term sentences imposed by the circuit court ran afoul of the sixth amendment to the United States Constitution as interpreted by the United States Supreme Court in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

The State of Hawai'i [hereinafter, "the prosecution"] counters that the circuit court properly exercised its broad discretion to sentence White to extended terms of imprisonment as a multiple offender because HRS § 706–662(4)(a), *see supra* note 3, passes muster under *Apprendi, Blakely,* and *Booker.* (Citing *State v. Maugaotega,* 107 Hawai'i 399, 114 P.3d 905 (2005); *State v. Rivera,* 106 Hawai'i 146, 102 P.3d 1044 (2004), *cert. denied,* —— U.S. ——, 126 S.Ct. 45, 163

L.Ed.2d 78 (2005); *State v. Kaua,* 102 Hawai'i 1, 72 P.3d 473 (2003).)

White responds that this court misconstrued *Blakely's* pronouncements in *Rivera* and incorrectly held that "Hawaii's extended term sentencing scheme is not incompatible with *Blakely* ..., inasmuch as ... *Blakely* addresses only statutory 'determinate' sentencing 'guideline' schemes." (Quoting *Rivera,* 106 Hawai'i at 150, 102 P.3d at 1048.)

We note that our recent decisions in *Rivera* and *Maugaotega*—which reaffirmed our holding in *Kaua* that Hawaii's extended term sentencing scheme does not run afoul of *Apprendi*—dispose of White's point of error. Nevertheless, inasmuch as White disputes our analysis of *Blakely* and mounts a new challenge to *Rivera's* interpretation of "indeterminate" sentencing schemes, we explain *Rivera's* consonance with the mandate of *Blakely.*[4]

As we discuss more fully *infra* in section III, White's arguments are unavailing. Ac-

---

(c) Such disability is known or reasonably should be known to the defendant.

(6) The defendant is a hate crime offender whose imprisonment for an extended term is necessary for the protection of the public. The court shall not make this finding unless:

(a) The defendant is convicted of a crime under chapter 707, 708, or 711; and

(b) The defendant intentionally selected a victim, or in the case of a property crime, the property that was the object of a crime, because of hostility toward the actual or perceived race, religion, disability, ethnicity, national origin, gender identity or expression, or sexual orientation of any person. For purposes of this subsection, "gender identity or expression" includes a person's actual or perceived gender, as well as a person's gender identity, gender-related self-image, gender-related appearance, or gender-related expression; regardless of whether that gender identity, gender-related self-image, gender-related appearance, or gender-related expression is different from that traditionally associated with the person's sex at birth.

4. On January 11, 2006, the United States Court of Appeals for the Ninth Circuit affirmed the United States District Court for the District of Hawaii's grant of Wayman Kaua's petition for a writ of habeas corpus in *Kaua v. Frank,* 350 F.Supp.2d 848 (D.Haw.2004), thereby vacating Kaua's extended sentence. *See Kaua v. Frank,* 436 F.3d 1057 (9th Cir. 2006). 28 U.S.C. § 2254(d) (2000) (concerning federal habeas relief) provides in relevant part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]

The district court held that our conclusion in *State v. Kaua,* 102 Hawai'i 1, 72 P.3d 473, that Kaua's extended sentence did not violate *Apprendi* was contrary to, and involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court." *Kaua v. Frank,* 350 F.Supp.2d at 860. The Ninth Circuit agreed that our affirmance of Kaua's extended term sentence contravened *Apprendi* and held that "[b]ecause the effect of the public protection finding was to increase Kaua's sentence above that authorized by the jury's guilty verdict, the Sixth Amendment required a jury to make that finding." *Kaua v. Frank,* 436 F.3d at 1062 (9th Cir. 2006).

The district court noted in its opinion that "[w]hile circuit law may be 'persuasive authority' for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law, only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied." *Kaua v. Frank,* 350 F.Supp.2d at 856 n. 6 (quoting *Clark v. Murphy,* 331 F.3d 1062, 1069 (9th Cir.2003)). Accordingly, we decline to follow the Ninth Circuit's holding.

cordingly, we affirm the circuit court's judgment of conviction and sentence of White to extended terms of imprisonment.

## I. BACKGROUND

On October 9, 2003, the prosecution charged White by complaint with the following offenses: (1) forgery in the second degree (Counts I & II) in violation of HRS § 708–852, see supra note 1, and (2) theft in the second degree (Count III) in violation of HRS § 708–831(1)(b), see supra note 2. On September 22, 2004, the circuit court commenced a jury trial that ended on September 24, 2004. On September 24, 2004, the jury returned a verdict of guilty as charged as to all three counts.

On November 26, 2004, the prosecution filed a motion to sentence White as a multiple offender to extended terms of imprisonment of ten years, pursuant to HRS § 706–662(4)(a), see supra note 3, for each of the three class C felonies of which he was simultaneously convicted. On that same day the prosecution also filed a motion for sentencing of a repeat offender to a mandatory minimum term of imprisonment of one year and eight months pursuant to HRS § 706–606.5(1)(a)(iv) (1993).[5] Finally, on November 26, 2004, the prosecution filed a motion for consecutive term sentencing pursuant to HRS § 706–668.5 (1993).[6]

The circuit court conducted a sentencing hearing on March 1, 2005, during which it sentenced White and considered the prosecution's motions for repeat offender, consecutive, and extended term sentencing. The circuit court concluded that White was a multiple offender under HRS § 706–662(4)(a), see supra note 3, and orally granted the prosecution's motion for extended terms of imprisonment. The circuit court also granted the prosecution's motion for repeat offender sentencing. The circuit court denied the prosecution's motion for consecutive term sentencing. With respect to all three counts, the circuit court sentenced White to an extended ten-year indeterminate maximum term of imprisonment, subject to a mandatory minimum term of imprisonment of one year and eight months. The circuit court ordered all sentences to run concurrently with one another.

On March 23, 2005, the circuit court entered orders granting the prosecution's motions for repeat offender and extended term sentencing.

On March 30, 2005, White timely filed a notice of appeal to this court.

## II. STANDARDS OF REVIEW

### A. Sentencing

[A] sentencing judge generally has broad discretion in imposing a sentence. State v. Gaylord, 78 Hawai'i 127, 143–44, 890 P.2d 1167, 1183–84 (1995); State v. Valera, 74 Haw. 424, 435, 848 P.2d 376, 381 ... (1993). The applicable standard of review for sentencing or resentencing matters is whether the court committed plain and manifest abuse of discretion in its decision. Gaylord, 78 Hawai'i at 144,

---

5. HRS § 706–606.5 provides in relevant part:

(1) Notwithstanding section 706–669 and any other law to the contrary, any person convicted of murder in the second degree, any class A felony [or] any class B felony ... and who has a prior conviction or prior convictions for the following felonies, including an attempt to commit the same: murder, murder in the first or second degree, a class A felony, a class B felony, or any felony conviction of another jurisdiction shall be sentenced to a mandatory minimum period of imprisonment without possibility of parole during such period as follows:
(a) One prior felony conviction:
. . . .
(iv) Where the instant conviction is for a class C felony—one year, eight months[.]

6. HRS § 706–668.5 provides:

(1) If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an unexpired term of imprisonment, the terms may run concurrently or consecutively. Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms run consecutively. Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms run concurrently.
(2) The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider the factors set forth in section 706–606.

890 P.2d at 1184; *State v. Kumukau,* 71 Haw. 218, 227–28, 787 P.2d 682, 687–88 (1990); *State v. Murray* [,] 63 Haw. 12, 25, 621 P.2d 334, 342–43 (1980); *State v. Fry,* 61 Haw. 226, 231, 602 P.2d 13, 16 (1979). *Keawe v. State,* 79 Hawai'i 281, 284, 901 P.2d 481, 484 (1995). "[F]actors which indicate a plain and manifest abuse of discretion are arbitrary or capricious action by the judge and a rigid refusal to consider the defendant's contentions." *Fry,* 61 Haw. at 231, 602 P.2d at 17. And, " '[g]enerally, to constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.' " *Keawe,* 79 Hawai'i at 284, 901 P.2d at 484 (quoting *Gaylord,* 78 Hawai'i at 144, 890 P.2d at 1184 (quoting *Kumukau,* 71 Haw. at 227–28, 787 P.2d at 688)).

*State v. Rauch,* 94 Hawai'i 315, 322, 13 P.3d 324, 331 (2000) (brackets and ellipsis points in original).

### B. *Questions Of Constitutional Law*

■ "We answer questions of constitutional law 'by exercising our own independent judgment based on the facts of the case,' " and, thus, questions of constitutional law are reviewed on appeal "under the 'right/wrong' standard." *State v. Jenkins,* 93 Hawai'i 87, 100, 997 P.2d 13, 26 (2000) (citations omitted).

*State v. Aplaca,* 96 Hawai'i 17, 22, 25 P.3d 792, 797 (2001).

### C. *Statutory Interpretation*

■ "[T]he interpretation of a statute ... is a question of law reviewable de novo." *State v. Arceo,* 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996) (*quoting State v. Camara,* 81 Hawai'i 324, 329, 916 P.2d 1225, 1230 (1996) (citations omitted)). *See also State v. Toyomura,* 80 Hawai'i 8, 18, 904 P.2d 893, 903 (1995); *State v. Higa,* 79 Hawai'i 1, 3, 897 P.2d 928, 930 (1995); *State v. Nakata,* 76 Hawai'i 360, 365, 878 P.2d 699, 704 (1994)....

*Gray v. Admin[.] Dir[.] of the Court,* 84 Hawai'i 138, 144, 931 P.2d 580, 586 (1997) (some brackets added and some in original)[; s ]*ee also State v. Soto,* 84 Hawai'i 229, 236, 933 P.2d 66, 73 (1997). Furthermore, our statutory construction is guided by established rules:

> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
>
> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists....
>
> In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(1) [ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

*Gray,* 84 Hawai'i at 148, 931 P.2d at 590 (*quoting State v. Toyomura,* 80 Hawai'i 8, 18–19, 904 P.2d 893, 903–04 (1995)) (brackets and ellipsis points in original) (footnote omitted). This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it ... to discover its true meaning." HRS § 1–15(2).... "Laws *in pari materia,* or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1–16 (1993).

*Rauch,* 94 Hawai'i at 322–23, 13 P.3d at 331–32 (quoting *State v. Kotis,* 91 Hawai'i 319, 327, 984 P.2d 78, 86 (1999)).

### III. *DISCUSSION*

■ White argues in his reply brief that, "[b]ased upon a careful review of *Blakely,*" our decision in *Rivera* "misconstrued *Blakely's* pronouncements regarding the applica-

bility of *Apprendi*" to Hawaii's extended term sentencing system. White urges us to reconsider *Rivera*, submitting that we erred in analyzing the "indeterminate" sentencing scheme discussed in *Blakely* because we presumed Washington's indeterminate sentencing scheme to be the same as Hawaii's. White posits that *Blakely* "used the terms 'determinate' and 'indeterminate' to distinguish between Washington's pre- and post–1981 sentencing schemes without explaining or defining what its use of those terms meant."

White claims that Justice O'Connor's dissent in *Blakely*, 542 U.S. at 314–17, 124 S.Ct. 2531 (O'Connor, J., dissenting), reveals that "the 'indeterminate' sentencing scheme previously used in Washington . . . differed significantly from Hawaii's 'indeterminate' sentencing scheme in that Washington judges actually had 'unfettered discretion' in choosing an amount of prison time within the statutory range set for an offense." White quotes Justice O'Connor's dissent in an effort to illustrate how "Hawaii's sentencing scheme is more akin to the scheme that *Blakely* labeled 'determinate,'" thus undermining our reasoning in *Rivera*. Citing HRS § 706–660 (1993),[7] White argues that, "[i]n contrast with Washington's former 'indeterminate' scheme, Hawaii's indeterminate sentencing scheme affords judges *no* discretion with regard to the number of years [of] imprisonment that a defendant must serve." (Emphasis in original.) White maintains that, in his case, "the judge was constrained to impose prison terms of exactly five years, whereas under Washington's 'indeterminate' scheme, a judge could have imposed anywhere between zero and five years," making Hawaii's sentencing scheme "more akin to the scheme that *Blakely* labeled 'determinate'" and that the Supreme Court struck down. White concludes that "the *Blakely* court's reasoning must be considered *within* the context of the Washington schemes,"

both pre–1981 and after the Washington state legislature passed the Sentencing Reform Act of 1981 (codified as Wash. Rev. Code chap. 9.94A). (Emphasis in original.) We believe that, notwithstanding Justice O'Connor's dissent in *Blakely* and Washington's pre- and post–1981 sentencing schemes, White's arguments are without merit.

The rule declared by the United States Supreme Court in *Apprendi* was that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348. The *Blakely* Court extended the *Apprendi* rule, explaining that "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." 542 U.S. at 302, 124 S.Ct. 2531 (emphasis in original).

In *State v. Kaua*, the first case to address the effects of *Apprendi* on Hawaii's extended term sentencing scheme, we

reaffirmed the "intrinsic-extrinsic" analysis first articulated by this court in *State v. Schroeder*, 76 Hawai'i 517, 880 P.2d 192 (1994), and reaffirmed in *State v. Tafoya*, 91 Hawai'i 261, 982 P.2d 890 (1999), and rejected the defendant's argument that *Apprendi* mandated that a "multiple offender" determination, for purposes of HRS § 706–662(4)(a), [*see supra* note 3,] must be made by the trier of fact, holding (1) that HRS § 706–662[, *see supra* note 3,] passed constitutional muster under the Hawai'i and United States Constitutions and (2) that "[t]he facts foundational to . . . extended terms of imprisonment . . ., pursuant to HRS § 706–662(4)(a), fell outside the *Apprendi* rule, and, thus, the ultimate finding that [a defendant] was a 'multiple

7. HRS § 706–660 provides:

A person who has been convicted of a class B or class C felony may be sentenced to an indeterminate term of imprisonment except as provided for in section 706–660.1 relating to the use of firearms in certain felony offenses and section 706–606.5 relating to repeat offenders. When ordering such a sentence, the

court shall impose the maximum length of imprisonment which shall be as follows:
(1) For a class B felony—10 years; and
(2) For a class C felony—5 years.
*The minimum length of imprisonment shall be determined by the Hawaii paroling authority in accordance with section 706–669.* (Emphasis added.)

offender' whose extensive criminal actions warranted extended prison terms was properly within the province of the sentencing court." [*State v.*] *Kaua,* 102 Hawai'i at 13, 72 P.3d at 485. In so holding, this court noted

the fundamental distinction between the nature of the predicate facts described in HRS §§ 706–662(1), (3), and (4), . . . on the one hand, and those described in HRS §§ 706–662(5) and (6), . . . on the other. Specifically, the facts at issue in rendering an extended term sentencing determination under HRS §§ 706–662(1), (3), and (4) implicate considerations completely "extrinsic" to the elements of the offense with which the defendant was charged and of which he was convicted; accordingly, they should be found by the sentencing judge in accordance with [*State v.*] *Huelsman* [, 60 Haw. 71, 588 P.2d 394 (1979),] and its progeny. The facts at issue for purposes of HRS §§ 706–662(5) and (6), however, are, by their very nature, "intrinsic" to the offense with which the defendant was charged and of which he has been convicted; accordingly, they must be found beyond a reasonable doubt by the trier of fact in order to afford the defendant his constitutional rights to procedural due process and a trial by jury. *Tafoya,* 91 Hawai'i at 271–72, 982 P.2d at 900–01; *Schroeder,* 76 Hawai'i at 528, 880 P.2d at 203.

*Id.* at 12–13, 72 P.3d at 484–85 (emphases added).

*Hauge,* 103 Hawai'i at 59–60, 79 P.3d at 152–53 (emphases deleted) (brackets in original).

Subsequently, in *Rivera,* we analyzed the effect of *Blakely* on Hawaii's sentencing scheme:

*Blakely* focused on the perceived defects of Washington state's determinate sentencing scheme, applying the rule the Court had previously crafted in *Apprendi, i.e.,* that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348.

Thus, the *Blakely* majority held that a Washington court's sentencing of a defendant to more than three years above the 53–month statutory maximum of the prescribed "standard range" for his offense, on the basis of the sentencing judge's finding that the defendant had acted with deliberate cruelty, violated his sixth amendment right to trial by jury. In our view, the *Blakely* analysis vis-a-vis *Apprendi* is confined to the meaning of the construct "statutory maximum" within the context of *determinate* or "guideline" sentencing schemes. Inasmuch as Hawaii's extended term sentencing structure is *indeterminate,* we believe that *Blakely* does not affect the "intrinsic-extrinsic" analysis that this court articulated in [*State v.*] *Kaua* [, 102 Hawai'i 1, 72 P.3d 473 (2003) ].

The *Blakely* majority explained that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" [542 U.S. at 303, [124 S.Ct. 2531]] (emphasis in original). "In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional facts." *Id.* (emphasis in original). Accordingly, the essential mandate of *Apprendi*—*i.e.,* that any fact other than a prior conviction must be submitted to a jury and proved beyond a reasonable doubt-is unaffected by the Court's decision in *Blakely.* *Blakely* can reasonably be construed, then, as a gloss on *Apprendi,* clarifying (1) that the upward limit of any given presumptive sentencing range prescribed in a statutory scheme utilizing a "determinate" sentencing "guideline" system constitutes the "statutory maximum" and (2) that a defendant upon whom a sentence exceeding this "statutory maximum" is imposed is entitled to all of the procedural protections that *Apprendi* articulates.

106 Hawai'i at 156, 102 P.3d at 1054 (emphases in original).

Recently, in *Booker,* the United States Supreme Court ADDRESSED the constitution-

ality of the statutory federal sentencing guidelines in the context of *Apprendi* and *Blakely.* The majority held (1) that the federal sentencing guidelines are subject to *Apprendi* constraints and (2) that the provisions of the Federal Sentencing Act making the sentencing guidelines mandatory were incompatible with *Apprendi,* thereby requiring severance of those provisions and rendering the guidelines advisory only:

> If the Guidelines as currently written could be read as merely *advisory* provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. *We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range.*

543 U.S. at 226, 232, 246, 125 S.Ct. 738 (citations omitted) (emphases added). Further to the foregoing, the Court explained why it was necessary to excise the provisions of the Federal Sentencing Act that made the guidelines mandatory:

> As the Court today recognizes in its first opinion in these cases, the existence of § 3553(b)(1) is a necessary condition of the *constitutional violation.* That is to say, without this provision—namely the provision that makes "the relevant sentencing rules ... mandatory and impose[s] binding requirements on all sentencing judges"— the statute falls outside the scope of *Apprendi's* requirement.
>
> The remainder of the Act "function[s] independently." Without the "mandatory" provision, the Act nonetheless requires judges to take account of the Guidelines together with other sentencing goals. *See* 18 U.S.C.A. § 3553(a) (Supp.2004). The Act nonetheless requires judges to consider the Guidelines "sentencing range established for ... the applicable category of offense committed by the applicable category of defendant," § 3553(a)(4), the pertinent Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims, §§ 3553(a)(1), (3), (5)-(7) (main ed. and

Supp.2004). *And the Act nonetheless requires judges to impose sentences that* reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, *protect the public,* and effectively provide the defendant with needed educational or vocational training and medical care. § 3553(a)(2) (main ed. and Supp.2004).

543 U.S. at 259–60, 125 S.Ct. 738 (some citations omitted) (emphases added).

We determined in *Maugaotega* that *Booker* did not alter the essential holdings of *Apprendi* and *Blakely:*

> [T]he declaration in *Booker* (1) that rendering the federal sentencing guidelines *advisory* rather than *mandatory* remedies their unconstitutionality and (2) that the Federal Sentencing Act continues to require judges to impose sentences that, among other things, "protect the public" essentially erases *discretionary* extended term sentencing schemes such as Hawaii's from the decision's purview.

107 Hawai'i at 408, 114 P.3d at 914.

Furthermore, in *Harris v. United States,* 536 U.S. 545, 565, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), the Supreme Court explained:

> Whether chosen by the judge or the legislature, the facts guiding judicial discretion *below* the statutory maximum need not be alleged in the indictment, submitted to the jury, or proved beyond a reasonable doubt. When a judge sentences the defendant to a mandatory minimum, no less than when the judge chooses a sentence within the range, the grand and petit juries already have found all the facts necessary to authorize the Government to impose the sentence. *The judge may impose the minimum, the maximum, or any other sentence within the range without seeking further authorization from those juries-and without contradicting Apprendi.*

(Emphases added.)

To respond to White's contention that "the 'indeterminate' sentencing scheme previously used in Washington ... differed significantly from Hawaii's 'indeterminate' sentencing

scheme in that Washington judges actually had 'unfettered discretion' in choosing an amount of prison time within the statutory range set for an offense," we must further distinguish Hawaii's sentencing scheme from the post–1981 Washington sentencing scheme at issue in *Blakely*.

Hawai'i utilizes a mandatory indeterminate sentencing scheme. *See [State v. ]Bernades*, 71 Haw. 485,] 488, 795 P.2d [842,] 844 [ (1990) ]. An indeterminate sentence is "[a] sentence to imprisonment for the maximum period defined by law, subject to termination by the parol board or other [authorized] agency at any time after service of the minimum period" ordinarily set by the paroling authority. *Black's Law Dictionary* 911 (4th ed.1968). In this jurisdiction, a convicted defendant's individual characteristics and culpability are considered by the Hawai'i Paroling Authority, which sets the minimum term of imprisonment, pursuant to HRS § 706–669 (1993). *Bernades*, 71 Haw. at 488, 795 P.2d at 844.

*Rivera*, 106 Hawai'i at 158, 102 P.3d at 1056. A "determinate sentence" is defined as "[a] sentence for a fixed length of time rather than for an unspecified duration." *Black's Law Dictionary* 1367 (7th ed.1999). Nevertheless, rather than look specifically to the terms "determinate" and "indeterminate" in order to interpret the impact of *Blakely*, it is more appropriate to look at the effect of the system that the Court discusses.

"In contrast to Hawaii's *indeterminate* sentencing scheme, at issue in *Blakely* was Washington's *determinate* sentencing structure and, particularly, the sentencing court's imposition of a sentence thirty-seven months in excess of the fifty-three-month upward limit of the statutorily enumerated 'standard range.'" *Rivera*, 106 Hawai'i at 159, 102 P.3d at 1057 (quoting *Blakely*, 542 U.S. at 302, 124 S.Ct. 2531) (emphases in original).

In Washington, second-degree kidnaping is a class B felony. State law provides that "[n]o person convicted of a [class B] felony shall be punished by confinement ... exceeding ... a term of ten years." Other provisions of state law, however, further limit the range of sentences a judge may impose. Washington's Sentencing Reform Act specifies, for petitioner's offense of second-degree kidnaping with a firearm, a "standard range" of 49 to 53 months. A judge may impose a sentence above the standard range if he finds "substantial and compelling reasons justifying an exceptional sentence." The Act lists aggravating factors that justify such a departure, which it recites to be illustrative rather than exhaustive. Nevertheless, "[a] reason offered to justify an exceptional sentence can be considered only if it takes into account factors other than those which are used in computing the standard range sentence for the offense." *State v. Gore*, 143 Wash.2d 288, 315–316, 21 P.3d 262, 277 (2001). When a judge imposes an exceptional sentence, he must set forth findings of fact and conclusions of law supporting it. A reviewing court will reverse the sentence if it finds that "under a clearly erroneous standard there is insufficient evidence in the record to support the reasons for imposing an exceptional sentence." *Gore, supra*, at 315, 21 P.3d, at 277.

Pursuant to the plea agreement, the State recommended a sentence within the standard range of 49 to 53 months. After hearing Yolanda's description of the kidnaping, however, the judge rejected the State's recommendation and imposed an exceptional sentence of 90 months—37 months beyond the standard maximum. He justified the sentence on the ground that petitioner had acted with "deliberate cruelty," a statutorily enumerated ground for departure in domestic-violence cases.

*Blakely*, 542 U.S. at 299–300, 124 S.Ct. 2531 (footnotes and citations omitted).

Therein lies the distinction between Hawaii's enhanced sentencing structure, set forth in HRS § 706–662, [*see supra* note 3,] and Washington's determinate sentencing guideline scheme: (1) In Hawai'i, the sentencing scheme is indeterminate, and there is no presumptive guideline range; and (2) the sentencing court could not have subjected the defendant to an extended term of imprisonment based on the same facts in *Blakely* without submitting those facts to the trier of fact, because the aggravating factor of "deliberate cruelty" en-

tailed an "intrinsic" fact so "inextricably enmeshed in the defendant's actions in committing the offense charged ... that the Hawai'i Constitution requires that these findings be made by the trier of fact[.]" [*State v.*] *Kaua,* 102 Hawai'i at 11, 72 P.3d at 483 (quoting [*Tafoya* ], 91 Hawai'i at 271–72, 982 P.2d at 900–01).

*Rivera,* 106 Hawai'i at 159–60, 102 P.3d at 1057–58.

As the Supreme Court further explained in *Blakely,*

[b]y reversing the judgment below, we are not, as the State would have it, "find[ing] determinate sentencing schemes unconstitutional." ... This case is not about whether determinate sentencing is constitutional, only about how it can be implemented in a way that respects the Sixth Amendment. Several policies prompted Washington's adoption of determinate sentencing, including proportionality to the gravity of the offense and parity among defendants.... Nothing we have said impugns those salutary objectives.

Justice O'Connor argues that, because determinate sentencing schemes involving judicial factfinding entail less judicial discretion than indeterminate schemes, the constitutionality of the latter implies the constitutionality of the former. This argument is flawed on a number of levels. First, the Sixth Amendment by its terms is not a limitation of judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence—and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned. In a system that says the judge may punish burglary with 10 to 40 years, every burglar knows he is risking 40 years in jail. In a system that punishes burglary with a 10–year sentence, with another 30 added for use of a gun, the burglar who enters a home unarmed is *entitled* to no more than a 10–year sentence—and by reason of the Sixth Amendment the facts bearing upon that entitlement must be found by a jury.

542 U.S. at 308–09, 124 S.Ct. 2531 (emphases in original) (citations omitted).

Simply put, Washington's system codified a *standard* range—in *Blakely* that range was 49 to 53 months within the 120–month total maximum sentence statutorily prescribed for class B felonies. Therefore, the statutory maximum of the standard range was 53 months, and *Blakely* instructs that any finding increasing the defendant's sentence beyond that standard range was required to be submitted to a jury and proved beyond a reasonable doubt, in accordance with *Apprendi.*

By contrast, Hawai'i does not employ a *standard* range for any of its felonies. The circuit court has no discretion to determine the length of a defendant's sentence. "The court's discretion is limited to choosing between imprisonment and other modes of sentencing. Once the court has decided to sentence a felon to imprisonment, the actual time of release is determined by parole authorities." *Rivera,* 106 Hawai'i at 159, 102 P.3d at 1057 (quoting the commentary to HRS § 706–660, *see supra* note 7).

White argues that

the "indeterminate" sentencing scheme previously used in Washington state (i.e., before the "determinate" sentencing system under which defendant Blakely was sentenced) differed significantly from Hawaii's "indeterminate" sentencing scheme in that Washington judges actually had "unfettered discretion" in choosing an amount of prison time within the statutory range set for an offense.

White interprets *Blakely's* statement that "[i]n a system that says the judge may punish burglary with 10 to 40 years, every bur-

glar knows he is risking 40 years in jail" to describe Washington's pre–1981 "indeterminate" sentencing scheme. (Quoting *Blakely*, 542 U.S. at 308–09, 124 S.Ct. 2531.) Conversely, White interprets the statement that

> [i]n a system that punishes burglary with a 10–year sentence, with another 30 added for use of a gun, the burglar who enters a home unarmed is *entitled* to no more than a 10–year sentence—and by reason of the Sixth Amendment the facts bearing upon that entitlement must be found by a jury

to describe Washington's post–1981 "determinate" sentencing scheme at issue in *Blakely*. (Quoting *Blakely*, 542 U.S. at 308–09, 124 S.Ct. 2531.) We agree with White's interpretation that the *Blakely* Court's characterization of the first sentencing system described Washington's pre–1981 indeterminate sentencing scheme. Nevertheless, we disagree with White's contention that Hawaii's sentencing system does *not* resemble Washington's pre–1981 sentencing scheme.

White insists that Hawaii's sentencing scheme has no range and that, as such, it is "more akin to the scheme that *Blakely* labeled 'determinate' " and in violation of a defendant's sixth amendment rights. To the contrary, Hawaii's sentencing system most closely resembles the Washington sentencing system that was in place *prior* to the Sentencing Reform Act of 1981 and thus, as we stated in *Rivera*, is excised from *Blakely's* analysis. *See Rivera*, 106 Hawai'i at 156–57, 102 P.3d at 1054–55. The range inherent in Hawaii's indeterminate sentencing scheme lies between probation and the statutory maximum prison term, but, rather than the sentencing judge setting the specific term that a defendant is to serve, the minimum time served is set by the parole board. Therefore, Hawaii's system more closely resembles the pre–1981 Washington system that was *not* at issue in *Blakely*. As Justice O'Connor noted in her dissent in *Blakely*,

> [p]rior to 1981, Washington, like most other States and the Federal Government, employed an indeterminate sentencing scheme. Washington's criminal code sepa-

rated all felonies into three broad categories: "class A," carrying a sentence of 20 years to life; "class B," carrying a sentence of 0 to 10 years; and "class C," carrying a sentence of 0 to 5 years. Sentencing judges, *in conjunction with parole boards*, had virtually unfettered discretion to sentence defendants to prison terms falling anywhere within the statutory range, including probation—i.e., no jail sentence at all.

542 U.S. at 315, 124 S.Ct. 2531 (O'Connor, J., dissenting) (emphasis added) (citations omitted). Similarly, sentencing judges in Hawai'i, in conjunction with parole boards, have "virtually unfettered discretion to sentence defendants to prison terms falling anywhere within the statutory range, including probation," *id.*

In *Blakely*, the judge was not authorized to impose the 90–month sentence based solely on the facts admitted in Blakely's plea. The aggravating fact in *Blakely* was that Blakely acted with what the sentencing judge deemed was "deliberate cruelty," whereas the fact that extended White's sentence was his concurrent conviction for two or more felonies. "The factor that justifies the enhancement of the sentence to extended prison terms, therefore, is the fact of prior or multiple felony convictions." *Rivera*, 106 Hawai'i at 162, 102 P.3d at 1060.

In the present matter, but for White's multiple convictions there would be no basis for extended prison terms. HRS § 706–662(4)(a), *see supra* note 3, authorizes a judge to impose an extended prison term upon finding that the defendant committed a previous felony; without the foregoing finding, notwithstanding that such a sentence may be considered "necessary for protection of the public," a judge would not be authorized to impose it. It is erroneous to think that the "necessary for protection of the public" requirement has any greater effect at extended term sentencing than it does at ordinary sentencing. The circuit court was first required to consider the factors set forth in HRS § 706–606 (1993)[8] "in deter-

---

8. HRS § 706–606 provides:

**Factors to be considered in imposing a sentence.** *The court, in determining the particular sentence to be imposed, shall consider:*

mining the particular sentence to be imposed." Among the traditional sentencing considerations set forth in HRS § 706–606, *see supra* note 8, is the "need for the sentence imposed ... [t]o protect the public from further crimes of the defendant," HRS § 706–606(2)(c).

> [I]nasmuch as both HRS §§ 706–606[, *see supra* note 8,] and 706–662[, *see supra* note 3,] require the determination of whether the sentence imposed is needed to protect the public, the sole ... factor, beyond those already enumerated in HRS § 706–606 and already considered by the sentencing court, which extends an indeterminate prison term pursuant to HRS § 706–662(4)(a), is the fact that a defendant is a multiple offender. The multiple offender determination, pursuant to HRS § 706–662(4)(a), mirrors the prior conviction exception in *Apprendi* because the defendant has either already pleaded guilty, and thereby admitted guilt, or the trier of fact has found beyond a reasonable doubt that the defendant has committed two or more felonies for which he is currently being sentenced. *See Apprendi*, 530 U.S. at 488, 120 S.Ct. 2348 ... (reasoning that both the "certainty that procedural safeguards attached to any 'fact' of prior conviction, and the reality that [the defendant] did not challenge ... that 'fact[,]' ... mitigated the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a 'fact' increasing punishment beyond the maximum of the statutory range").

*Rivera*, 106 Hawai'i at 163, 102 P.3d at 1061.

Because we disagree with White that "[t]he *Rivera* court's acceptance of *Blakely's* labels (particularly the term 'indeterminate'), absent confirmation that Washington's definition of 'indeterminate' was the same or near-

ly the same as Hawaii's," was erroneous and that the "necessary for protection of the public" consideration is qualitatively different as between ordinary and extended-term sentencing, we affirm White's extended-term sentence.

## IV. CONCLUSION

Based on the foregoing analysis, we affirm White's sentence to extended terms of imprisonment.

Dissenting Opinion by ACOBA, J., with whom DUFFY, J., joins.

I respectfully dissent.

The majority notes that both the United States District Court for the District of Hawai'i (the district court) in *Kaua v. Frank*, 350 F.Supp.2d 848 (D.Haw.2004), and the United States Ninth Circuit Court of Appeals in *Kaua v. Frank*, 436 F.3d 1057 (9th Cir. 2006), have ruled that *State v. Kaua*, 102 Hawai'i 1, 72 P.3d 473 (2003), upon which the majority's opinion is premised, violated *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Majority opinion at 1109 n. 4. Inasmuch as the decisions of the district court and the Ninth Circuit are in consonance with the dissent in *State v. Rivera*, 106 Hawai'i 146, 102 P.3d 1044 (2004), I agree with the reasoning in those decisions.

Concededly, this court is not obligated to follow a decision of the Ninth Circuit even on a federal constitutional question. *State v. Simeona*, 10 Haw.App. 220, 237, 864 P.2d 1109, 1117 (1993), *overruled on other grounds by State v. Ford*, 84 Hawai'i 65, 70, 929 P.2d 78, 83 (1996). *See also Strong v. Omaha Constr. Indus. Pension Plan*, 270 Neb. 1, 701 N.W.2d 320, 328 (Neb.2005) ("[W]hile Nebraska courts must treat U.S. Supreme

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) *The need for the sentence imposed:*

  (a) To reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense;

  (b) To afford adequate deterrence to criminal conduct;

  (c) *To protect the public from further crimes of the defendant;* and

  (d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) The kinds of sentences available; and

(4) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

(Emphases added).

Court decisions as binding authority, lower federal court decisions are only persuasive authority."); *People v. Bradley*, 1 Cal.3d 80, 81 Cal.Rptr. 457, 460 P.2d 129, 132 (1969) ("[A]lthough [California courts] are bound by decisions of the United States Supreme Court in interpreting the federal Constitution, we are not bound by the decisions of lower federal courts even on federal questions." (Citations omitted.)). But here, the federal district court effectively has the power to review our decisions via the writ of habeas corpus. The Ninth Circuit's *Kaua* decision has in large part undercut the *Rivera* "intrinsic-extrinsic fact" distinction and the two-step sentencing process of *State v. Okumura*, 78 Hawai'i 383, 894 P.2d 80 (1995), and *State v. Schroeder*, 76 Hawai'i 517, 880 P.2d 192 (1994). As Defendant–Appellant Wayde K. White (White) indicates, he "principally seeks to preserve this issue for later federal habeas review, in the event such remedy becomes necessary." Thus, the availability of federal habeas proceedings and the resulting impact on the parties and both state and federal courts makes a reexamination of our extended-term sentencing decisions even more imperative.

## I.

In *Kaua*, the defendant, Wayman Kaua, had been convicted of class A felonies, subjecting him to an indeterminate term of imprisonment of twenty years, and of class B and C felonies, subjecting him to indeterminate terms of imprisonment of ten and five years, respectively. 350 F.Supp.2d at 850–51. The prosecution filed a motion for extended terms of imprisonment pursuant to Hawai'i Revised Statutes (HRS) § 706-662(4) (Supp.1999). *Id.* at 851. The sentencing judge granted the prosecution's motion. *Id.* The judge found that Kaua was a multiple offender and decided that an extended term of imprisonment for Kaua was necessary for the protection of the public. *Id.* at 851–52. Kaua then appealed to this court.

After *Apprendi* and *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) were decided, this court decided *Kaua*, upholding the extended sentence. 102 Hawai'i at 13, 72 P.3d at 485. Kaua subse-quently filed a petition for writ of habeas corpus with the district court, challenging the extended sentence. The district court held that this court's decision violated *Apprendi*. As the district court said in *Kaua*, "[t]his case involves a statute that exposed [the defendant] to an enhanced punishment based on judge-determined facts." 350 F.Supp.2d at 861. "His extended sentence, which was based on these findings, violated *Apprendi* and represented 'a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Id.* Later, the Ninth Circuit would state succinctly:

> The sentencing court's public protection finding, coupled with the finding of multiple felonies, exposed Kaua to a sentence greater than the jury's guilty verdict authorized. Although it was proper for the court to make the multiple felony finding, under *Apprendi*, a jury should have made the public protection finding. The Hawaii Supreme Court's opposite conclusion, therefore, was contrary to *Apprendi*.

*Kaua*, 436 F.3d at 1062.

## II.

After the district court issued its decision, our decision in *Rivera* was issued thirteen days later. In the dissent in that case, in which Justice Duffy joined, it was noted that this court's decision in *Kaua* appeared incorrect.

In light of *Blakely v. Washington*, [542] U.S. [296] (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), I believe our prior decisions in *State v. Kaua*, 102 Hawai'i 1, 72 P.3d 473 (2003), and *State v. Hauge*, 103 Hawai'i 38, 79 P.3d 131 (2003), must be reexamined. In my view, in *Blakely*, the United States Supreme Court further explicated the holding in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and emphatically reaffirmed that the United States Constitution's Sixth Amendment right to a jury trial mandates that " '[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be

submitted to a jury, and proved beyond a reasonable doubt.'" ... Applying the plain import of *Blakely* and unless it is otherwise qualified, it would appear that "the State's sentencing procedure [in this case] did not comply with the Sixth Amendment," *Blakely*, [542] U.S. at [305], 124 S.Ct. at 2538, and, thus, the sentence imposed on [Larry Rivera] "is invalid[,]" *id.*, and the case should be remanded for resentencing.

*Rivera*, 106 Hawai'i at 166–67, 102 P.3d at 1064–65 (Acoba, J., dissenting). Further, the dissent indicated that "the core premises in *Blakely* are derived from *Apprendi*, ... and insofar as such premises are set forth in *Blakely*, references to *Blakely* would encompass *Apprendi*." *Id.* at 167 n. 1, 102 P.3d 1044, 102 P.3d at 1065 n. 1. In *Rivera*, Rivera was sentenced to an extended term as both a persistent and multiple offender under the same HRS provision as Kaua. As was said in the *Rivera* dissent, the sentencing court's finding that Rivera's actions warranted an extended term for the protection of the public under HRS § 706–662(4) was an additional fact not embodied in the jury's verdict and thus was required to be found by a jury.

The Supreme Court explained that "when the term 'sentence enhancement' is used to describe an increase beyond the maximum authorized statutory sentence, it is the *functional equivalent of an element of a greater offense* than the one covered by the jury's guilty verdict." *Apprendi*, 530 U.S. at 496 n. 19, 120 S.Ct. 2348 (emphasis added).

....

... As in *Blakely*, the court "cannot make that judgment without finding some facts to support it *beyond the bare elements of the offense.*" *Blakely*, [542] U.S. at [305] n. 8, 124 S.Ct. at 2538 n. 8 (emphasis added). Thus, the court made "findings of fact" to support its "judgment" that the sentence was necessary to protect the public based on facts beyond those established by the guilty verdict.

... *Tellingly, then, the court could not have imposed the extended sentence simply on the strength of the jury's verdict; rather, it was required to make supple-* *mental findings justifying a sentence double that which could be authorized under the jury verdict. Consequently, in the instant case, "the verdict alone [did] not authorize the sentence." Id.* But "[w]hen a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment' ... and the judge exceeds his proper authority," *id.*, and the sentence must be vacated.

106 Hawai'i at 171, 102 P.3d at 1069 (emphasis added).

After *Rivera* was issued, and before the issuance of the decision herein, the Ninth Circuit sustained the district court's ruling in *Kaua*, reiterating that the necessity of public protection to justify an enhanced sentence was a finding that must be made by the jury and not the judge.

The Hawaii sentencing court found that an extended sentence was necessary to protect the public in Kaua's case. Because the effect of this finding was to increase Kaua's sentence above that authorized by the jury's guilty verdict, we hold that [*Apprendi*] required a jury to make the finding. In reaching the opposite conclusion, the Hawaii Supreme Court applied a rule—the "intrinsicextrinsic" analysis—contrary to the rule that *Apprendi* announced.

436 F.3d at 1058 (footnote omitted).

### III.

The facts here are like those in *Kaua* and *Rivera*. In the instant case, Plaintiff–Appellee State of Hawai'i, (the prosecution) sought to have White sentenced as a repeat offender to a mandatory minimum term of imprisonment of one year and eight months pursuant to HRS § 706–606.5(1)(a)(iv) (1993), as a multiple offender to extended terms of imprisonment of ten years, pursuant to HRS § 706–662(4)(a) (Supp.2003) for each of the three class C felonies of which he was convicted, and to consecutive terms of imprisonment pursuant to HRS § 706–668.5 (1993). The court denied the motion for consecutive term sentencing but granted the other motions.

As White argues, an extended term increased his imprisonment beyond that that would otherwise be authorized under the jury verdict.

> [T]he "ordinary term" of imprisonment (i.e., prescribed statutory maximum) for Forgery in the Second Degree is five years because HRS § 706–852(2) specifies that it is a class C felony. Since HRS § 708–831(12) specifies that Theft in the Second Degree is also a class C felony, then the "ordinary term" of imprisonment under HRS § 706–660 is likewise five years. *An extended term sentence of ten years for a class C felony pursuant to HRS § 706–661(4) clearly constitutes an increase over the "ordinary term" maximum penalty of five years for both Forgery in the Second Degree and Theft in the Second Degree offenses.* As in Apprendi's case, imposing an extended term sentence for class C felony effectively transforms the offense into a class B felony for which the ordinary term of imprisonment is ten years.

(Emphasis added.) Before imposing an extended term, the court made findings with respect to the protection of the public.

> You know, Mr. White, I would agree with your attorney that his instant offense does not in itself involve violence. But based upon the records and files that I have in this particular case, there's substantial evidence that would contradict the arguments of your attorney. You basically have had no means of employment since your first lengthy incarceration, which was for a violent offense. You share with me today that incarceration is not the way. You pulled an open term. Yet, you come back a few years later only to be convicted of another felony offense

> You know, Mr. White, maybe in the last few months, you have done very well, and I commend you for that. But nevertheless, the court makes a finding that you are persistent offender, [sic] *and it is necessary for the protection of the public to impose a prison sentence on you for an extended period of time.* So I will grant the State's motion for sentencing defendant to an extended term of incarceration,

and I will grant defendant's [sic] motioning [sic] for sentencing of repeat offender.

(Emphasis added.)

## IV.

In response to White's appeal, the majority attempts to distinguish our sentencing scheme from that in *Blakely.* The majority maintains that "Washington's system codified a standard range—in *Blakely* that range was 49 to 53 months within the 120–month total maximum sentence statutorily prescribed[,]" majority opinion at 1116 (emphasis omitted), and "*Blakely* instructs that any finding increasing the defendant's sentence beyond that standard range was required to be submitted to a jury[,]" *id.* According to the majority, however, "Hawai'i does not employ a standard range for any of its felonies [because t]he circuit court['s] . . . 'discretion is limited to choosing between imprisonment and other modes of sentencing [and o]nce the court has decided to sentence a felon to imprisonment, the actual time of release is determined by parole authorities[,]' " *id.* (quoting *Rivera,* 106 Hawai'i at 159, 102 P.3d at 1057 (other citation omitted)).

But, the dispute on whether our sentencing system is more or less determinate or indeterminate than the state of Washington's is or was, is not dispositive of whether the jury must render findings necessary for extended imprisonment. Under *Blakely* the Sixth Amendment right to jury applies because an extended sentence exceeds that sentence that is derived from the jury's verdict.

> [T]hat our sentencing structure may generally be denominated an "indeterminate" one is not a basis for distinguishing *Blakely.* . . . Ordinarily, then, under an indeterminate scheme of sentencing such as our own, *the ordinary indeterminate sentence imposed by the court is not the subject of further jury decision because the indeterminate sentence is authorized by the jury's verdict. That is not the case here, however. The extended sentences have been imposed pursuant to a separate nonjury extended term proceeding,* tacking on an additional five years to the indeterminate sentence of five years on each of Count I and Count II.

*Rivera,* 106 Hawai'i at 171, 102 P.3d at 1069 (Acoba, J., dissenting) (emphasis added). Thus,

> it is the findings of the court, based on facts and factors not submitted to the jury, that resulted in a prison term beyond that simply attributable to the guilty verdict. In imposing the extended sentences, the court was not deciding a sentence within fixed statutory limits, ... but whether to impose an additional term of imprisonment.... The extended term proceeding under the logic of *Blakely* would be a proceeding subject to the right to jury trial under the Sixth Amendment.

*Id.* (emphasis added). The fact that the paroling authority may determine the minimum sentence is not a dispositive factor, for the extended term is an additional sentence based on facts that are not determined by a jury. Under *Apprendi,*

> "[l]abels ... [such] as ... 'elements' and 'sentencing factor,'" then, are not the "answer." To reiterate, the "relevant inquiry is ... [the] *effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?*" *Id.* (emphasis added). Therefore, whether the required finding of "necessary for the protection of the public," HRS § 706–662, is viewed as an "elemental" fact or a "sentencing factor," 530 U.S. at 467, 120 S.Ct. 2348, or that the supporting subsidiary facts found by the court constitute part of such facts or factors, "it remains the case" that the *effect* of the court's pronouncement under HRS § 706–606 subjects the defendant to greater punishment than that which could be imposed on the basis of the guilty verdict only.

*Id.* (emphasis added) (citation omitted). Plainly, the "required finding" regarding the "protection of the public" by the sentencing court "expose[d]" White to "greater punishment." The Ninth Circuit decided likewise.

With respect to the Hawaii Supreme Court's decision, we disagree with its reasoning that the "extrinsic" nature of the factual findings required for step two exempt them from *Apprendi's* reach. *Apprendi* made irrelevant any distinction between facts based on their "intrinsic" or "elemental" quality for purposes of ascertaining whether the Sixth Amendment require a jury to find them. *Apprendi* announced a new rule that focused on the *effect* of a court's finding of fact, not on the label the statute or the court applied to that fact.

*Kaua,* 436 F.3d at 1061 (footnotes omitted) (emphasis in original).

### V.

The majority maintains that without the finding that the defendant committed a previous felony a judge would not be authorized to impose extended prison terms under HRS § 706–662(4)(a). Majority opinion at 1117. Reiterating the argument above, the majority contends that "rather than the sentencing judge setting the specific term that a defendant is to serve, the minimum time served is set by the parole board." *Id.* at 1117. It concludes, then, that " '[t]he factor that justifies the enhancement of the sentence to extended prison terms, therefore, is the fact of prior or multiple felony convictions.'" *Id.* at 1117 (quoting *Rivera,* 106 Hawai'i at 162, 102 P.3d at 1060).

The majority made a similar argument in *Kaua.* In its habeas decision, the district court noted this court had indicated that "the finding that Kaua was a multiple offender fell outside the scope of *Apprendi,* like any finding based solely on a prior conviction[,]" *Kaua,* 350 F.Supp.2d at 859, and "that it was only Kaua's multiple offender status that had exposed him to the extended sentence range ... [;] the sentencing court's determination that Kaua's incarceration was necessary for the protection of the public was a mere offshoot of [that] finding[,]" *id.* In response, the district court said

> The Hawaii Supreme Court's conclusion that Kaua's extended sentence did not violate *Apprendi* was contrary to, and involved an unreasonable application of, clearly established federal law, as determined by the United State[s] Supreme Court.... The *Kaua* decision simply ignored the language in *Apprendi* stating:
>
> > When the term "sentencing enhancement" is used to describe an increase

beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict....

*Apprendi*, 530 U.S, at 494 n. 19, 120 S.Ct. 2348.

... The Hawaii Supreme Court ignored the effect of the "protection of the public" determination on Kaua's sentence. *Both in the hearing before this court and in its papers, the State of Hawaii admitted that the sentencing judge had to make that "protection of the public" determination before imposing the extended sentence.... [W]hat the Hawai'i Supreme Court failed to recognize was that the effect of that determination was to remove the functional equivalent of an element from the jury's province.*

350 F.Supp.2d at 860–61 (brackets omitted) (emphasis added).

Multiple convictions do not constitute the conclusive fact the majority indicates is determinative of whether an extended term is necessary. As HRS § 706–662(4) instructs, an extended sentence cannot be entered unless White's "criminal actions were so extensive" so as to warrant a term "necessary for the protection of the public." Thus in addressing White at the time of sentencing, the court ruled, "[T]he court makes a finding that you are a [multiple] offender, *and* it is necessary for the protection of the public to impose a prison sentence on you for an extended period of time." (Emphasis added.)

### VI.

With all due respect, the failure to acknowledge what appears patent leads the majority to reject the conclusion that "the 'necessary for protection of the public' consideration is qualitatively different as between ordinary and extended-term sentencing[.]" Majority opinion at 1118. Contrary to the majority's assertion that "[i]t is erroneous to think that the 'necessary for protection of the public' requirement has any greater effect at extended term sentencing than it does at ordinary sentencing[,]" majority opinion at 1117, the language of HRS § 706–662(4)(a), a pari materia reading of that stat-

ute and HRS § 706–606, and the commentary to HRS § 706–660 demonstrate that such a requirement "is [indeed] qualitatively different" for purposes of ordinary and extended term sentencing. The same argument was made by the majority in *Rivera* and is refutable again.

HRS § 706–606 is not determinative in the calculus of whether White should be sentenced to an extended term as the majority suggests. Majority opinion at 1117. Unlike HRS § 706–606, HRS § 706–662 specifically and expressly sets forth, as stated in the title, the necessary "*criteria* for extended terms of imprisonment" (emphasis added), and mandates that "the convicted defendant [must] satisf[y] one or more of the following criteria: ... (4)[t]he defendant is a multiple offender whose criminal actions were so extensive that a sentence of imprisonment for an extended term is necessary for protection of the public." HRS § 706–662(4). The distinction between HRS § 706–606 and HRS § 706–662 was elucidated in the *Rivera* dissent in response to a similar argument by the majority made in *Rivera*.

[T]he majority maintains there exists an equation between consideration of the "protection of the public" factor as part of the general sentencing considerations under HRS § 706–606 and the "protection of the public" determination under HRS § 706–662 such that in extended term sentencing "the sole determining factor remaining that increases the penalty" are "the prior conviction[s]" which are not subject to jury determination under *Apprendi* or *Blakely*. The fallacy, of course, is that the determinations are not the same.

On its face, HRS § 706–606 (1993) sets forth a multiple factor list to generally guide the court in sentencing. It does not authorize any particular sentence.... While pursuant to HRS § 706–606 the court must *consider* the protection of the public as one of other multiple factors, it is not required to *find* upon express facts that protection of the public mandates an indeterminate sentence, as is required by HRS § 706–662 for an extended sentence.

*Rivera*, 106 Hawai'i at 173–74, 102 P.3d at 1071–71 (Acoba, J., dissenting).

Contradicting the proposition advanced by the majority, the penal code expressly states

that the policy underlying "ordinary" indeterminate sentencing under 706–606 is to be distinguished from that warranting extended term sentencing under 706–662.

> *Thus, the commentary to HRS § 706–660 draws a distinction between an "ordinary" indeterminate sentence under HRS § 706–660 and an enhanced sentence under a provision like HRS § 706–662:*
>
>> With the exception of special problems calling for extended terms of incarceration as provided in subsequent sections, it provides for only one possible maximum length of imprisonment for each class of felony. . . .
>>
>> Once the court has decided to sentence a felon to imprisonment, the actual time of release is determined by parole authorities. Having decided on imprisonment, the court must then impose the maximum term authorized.
>>
>> . . . .
>>
>> *[T]his section embodies a policy of differentiating exceptional problems calling for extended terms of imprisonment from the problems which the vast majority of offenders present* [.]
>
> (Emphasis added.) (Footnotes omitted.) . . .
>
> *The sentences provided in this section, when compared to the extended sentences authorized in subsequent sections seek to achieve the recommended explicit differentiation.*

Hence, in the "subsequent sections" referred to, such as HRS § 706–661, an "extended term[ ]" for a class C felony is set at ten years, HRS § 706–661(4) (Supp. 2003). That term would be applied on conviction of a class C felony in those cases designated in HRS § 706–662 where, as here, the court finds a defendant a persistent offender, HRS § 706–662(1), or a multiple offender, HRS § 706–662(4).

106 Hawai'i at 174–75, 102 P.3d at 1072–73 (Acoba, J., dissenting) (emphasis in original and emphasis added).

It must be concluded, then, that the sentencing determination as to the protection of the public under HRS § 706–662 is *indeed* "qualitatively different" from that of HRS § 706–606.

An extended term, then, is intended to "explicit[ly] differentiat[e]," commentary to HRS § 706–660, "exceptional cases," *id.*, from "ordinary" indeterminate terms that are set forth in HRS § 706–660, for "most offenses." Thus, in contrast with HRS § 706–606, which treats protection of the public as one consideration among others in generally guiding the sentencing court as to whether to impose an ordinary sentence of imprisonment under HRS § 706–660, or another sentencing alternative such as probation or a suspended sentence, HRS § 706–662(1) and (4) focus upon whether the protection of the public warrants a term beyond the ordinary sentence. *Generally, then, the protection of the public factor in HRS § 706–606 is one among several considerations in deciding whether to sentence a defendant to an ordinary imprisonment term under HRS § 706–660 or probation or suspension of sentence, as contrasted to HRS § 766–662 in which the question is not whether the protection of the public warrants a prison term or not, but whether it requires the length of the term served to be beyond that* which would be imposed in "the vast majority of case[s]." Commentary to HRS § 706–660.

Accordingly, "the determination that it is 'necessary for protection of the public[,]' HRS § 706–662[,]" is decidedly *not* "effectively the same one that the sentencing court has made upon concluding that a defendant should be sentenced to an indeterminate maximum term of imprisonment rather than probation[,]" as the majority contends. This contextual misapprehension of the standard leads to the fallacy in the majority's conclusion that "inasmuch as both HRS §§ 706–606 and 706–662 require the determination of whether the sentence imposed is needed to protect the public, the *sole* determining factor remaining that increases the penalty under Hawaii's extended term sentencing in HRS § 706–662(1) is the fact of a prior conviction, . . . expressly authorized . . . in *Apprendi* and again in *Blakely* [ ] . . . [and similarly t]he multiple offender determination, pursuant to HRS § 706–662(4)(a), mirrors the prior conviction exception in *Apprendi* [.]"

*Rivera,* 106 Hawai'i at 175, 102 P.3d at 1073 (Acoba, J., dissenting) (brackets, footnotes, and citations omitted) (some emphases in original and some added). Therefore, a determination that the defendant's "criminal actions were so extensive" that an extended sentence for the protection of the public is warranted is a fact that must be determined by a jury.

The Ninth Circuit has ruled similarly.

Kaua challenges the Hawaii Supreme Court's conclusion that *Apprendi* permits a judge, rather than a jury, to find the facts required to satisfy step two of section 706–662(4)'s sentencing process. The second step requires a sentencing judge to determine if extending the defendant's sentence is necessary for the protection of the public. This inquiry requires the court to find facts outside of those found by the jury that expose the defendant to an increased sentence. Because *Apprendi* held that any act other than the fact of a prior conviction that increase the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt, we agree with Kaua that a jury must find the facts required to satisfy step two.

*Kaua,* 436 F.3d at 1060 (footnotes omitted).

## VII.

In light of the foregoing, the sentencing procedure did not comply with the Sixth Amendment.[1] Accordingly, White's extended term sentences must be vacated and the case remanded for resentencing.

---

1. In *State v. Tafoya,* 91 Hawai'i 261, 273, 982 P.2d 890, 902 (1999), this court said:

 *[W]hen a fact susceptible to jury determination is a predicate to the imposition of an enhanced sentence, the Hawai'i Constitution requires that such factual determinations be made by the trier of fact.* The legislature may not dilute the historical province of the jury by relegating facts necessary to the imposition of a certain penalty for criminal behavior to the sentencing court.

 (Emphasis added.) The public protection requirement in HRS § 706–662(4) is "a predicate to the imposition of an enhanced sentence." *Id.* Consequently its existence must be determined by the jury, the trier of fact in criminal cases, unless a jury is waived by the defendant. *See State v. Young,* 93 Hawai'i 224, 237, 999 P.2d 230, 243 (2000) (concluding that "a jury may infer that the victim suffered unnecessary torture based upon circumstantial evidence, if the circumstantial evidence is sufficient to convince the jury, beyond a reasonable doubt, that the murder was 'especially heinous, atrocious, or cruel' "); *State v. Janto,* 92 Hawai'i 19, 26, 33, 986 P.2d 306, 313, 320 (1999) (concluding that findings leading to an enhanced sentence must be made by the trier of fact to protect a defendant's constitutional rights to due process and a jury trial where enhanced sentence following conviction of second degree murder hinged on whether the murder was committed in a particularly heinous, atrocious, or cruel manner).

 A defendant's right to a jury determination of that requirement, then, is grounded in the right to jury trial provision in article I, section 14 of the Hawai'i Constitution, separate and independent from the provisions of the Sixth Amendment of the United States Constitution. *See e.g., State v. Kam,* 69 Haw. 483, 491, 748 P.2d 372, 377 (1988) (stating that "as the ultimate judicial tribunal with final, unreviewable authority to interpret and enforce the Hawai'i Constitution, [the Hawai'i Supreme Court is] free to give broader privacy protection than that given by the federal constitution").