137 P.3d 349

**Raymond Ira ALTHOUSE,**
**Petitioner–Appellant**

v.

**STATE of HAWAI'I, Respondent–**
**Appellee.**

No. 25168.

Supreme Court of Hawai'i.

June 16, 2006.

Robert D.S. Kim, on the briefs, for Petitioner–Appellant Raymond Ira Althouse.

Darien W.L. Ching, Deputy Prosecuting Attorney, on the briefs, for Respondent–Appellee State of Hawai'i.

Lisa M. Itomura, Deputy Attorney General, on the briefs, for Respondent–Appellee State of Hawai'i.

MOON, C.J., LEVINSON, NAKAYAMA, and ACOBA, JJ. and Intermediate Court of Appeals Judge FOLEY, Assigned by Reason of Vacancy.

Opinion of the Court by NAKAYAMA, J.

Defendant–Appellant Raymond Ira Althouse [hereinafter "Althouse"] appeals from the third circuit court's[1] June 10, 2002 order partially granting and partially denying his Hawai'i Rules of Penal Procedure [hereinafter "HRPP"] Rule 40 petition. On appeal, Althouse argues that: (1) the circuit court erred by failing to grant that portion of his HRPP Rule 40 petition requesting a declaration that any minimum term hearing be held after the expiration of the fifteen-year mandatory minimum sentence of incarceration entered pursuant to Hawai'i Revised Statutes [hereinafter "HRS"] § 706–660.1 (1993); and (2) the circuit court erred by failing to grant his motion for an order staying any minimum term hearing pending resolution of the present appeal.

1. The Honorable Greg K. Nakamura presided.

Based upon the following analysis, we affirm the third circuit court's June 10, 2002 order.

## I. BACKGROUND

On February 5, 1997, the third circuit court filed a judgment convicting Althouse of the offense of second degree murder and sentencing him to life imprisonment with a mandatory minimum term of fifteen years, pursuant to HRS § 706–660.1.

On June 13, 1997, the Hawai'i Paroling Authority [hereinafter "HPA"] conducted a hearing at which the murder victim's parents provided testimony. At the hearing Althouse was not represented by counsel because his court-appointed attorney failed to attend. Accordingly, the witnesses were not subjected to cross-examination. Althouse protested by refusing to participate in the hearing without the aid of counsel. The HPA thereafter tacked an additional fifteen-year minimum term of incarceration onto the circuit court's fifteen-year mandatory minimum sentence.

On March 8, 1999, Althouse filed an HRPP Rule 40 petition, *in forma pauperis*, arguing that: (1) he was illegally being held in custody based on the HPA's lack of jurisdiction in light of the third circuit court's imposition of a fifteen-year mandatory minimum sentence of incarceration, pursuant to HRS § 706–660.1; (2) the HPA had no jurisdiction to fix a minimum term of imprisonment while he was subject to the third circuit court's fifteen-year mandatory minimum sentence based on Hawai'i Administrative Rules § 23–700–21; and (3) the HPA improperly and illegally allowed the taking of witness testimony on June 13, 1997, despite the fact that he had requested legal counsel to assist him at the hearing and that legal counsel did not attend the hearing.

At a hearing held on July 7, 2000, the court indicated that it was "concerned about the lack of a record with respect to what occurred before the Hawaii Paroling Authority[.]" The court thereafter suggested a continuance in order to facilitate a more

complete record. It was subsequently revealed that the lack of an adequate record regarding the HPA proceedings was caused by a defect in the audio tapes used to record those proceedings. Transcripts of the June 13, 1997 hearing were thus unavailable because the audiotape recording of the hearing did not contain any sound.

On December 18, 2001, Althouse filed a motion requesting that the circuit court invalidate the HPA's minimum term of incarceration and order a new minimum term hearing.

On April 12, 2002, the court partially granted Althouse's motion agreeing that he was entitled to representation at the June 13, 1997 hearing. The court thus invalidated the minimum term of incarceration imposed by the HPA and ordered the HPA to conduct a new minimum term hearing. However, the court denied Althouse's motion with respect to his assertion that HRS § 706–660.1 precluded the commencement of the new minimum term hearing prior to the expiration of the minimum sentence entered by the circuit court. The court concluded that HRS § 706–660.1 "does not require that the mandatory minimum term expires first before the paroling authority proceeds to set a minimum term of imprisonment[.]"

On June 3, 2002, Althouse filed a motion requesting that the court order a stay on the new minimum term hearing pending appeal. He then filed a timely notice of appeal on June 17, 2002.

On June 26, 2002, the circuit court filed an order denying Althouse's motion for stay.

## II. STANDARD OF REVIEW

 We have previously set forth the following principles with respect to questions involving statutory interpretation:

> "[T]he interpretation of a statute ... is a question of law reviewable de novo." *State v. Arceo,* 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996) (*quoting State v. Camara,* 81 Hawai'i 324, 329, 916 P.2d 1225, 1230 (1996) (citations omitted)). *See also State v. Toyomura,* 80 Hawai'i 8, 18, 904 P.2d 893, 903 (1995); *State v. Higa,* 79 Hawai'i 1, 3, 897 P.2d 928, 930 (1995); *State v.*

*Nakata,* 76 Hawai'i 360, 365, 878 P.2d 699, 704 (1994). . . .

> *Gray v. Admin*[.] *Dir*[.] *of the Court,* 84 Hawai'i 138, 144, 931 P.2d 580, 586 (1997) (some brackets added and some in original)[; *s ]ee also State v. Soto,* 84 Hawai'i 229, 236, 933 P.2d 66, 73 (1997). Furthermore, our statutory construction is guided by established rules:

> > When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

> > When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. . . .

> > In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(1) [ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

> *Gray,* 84 Hawai'i at 148, 931 P.2d at 590 (*quoting State v. Toyomura,* 80 Hawai'i 8, 18–19, 904 P.2d 893, 903–04 (1995)) (brackets and ellipses points in original) (footnote omitted). This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it ... to discover its true meaning." HRS § 1–15(2). . . . "Laws *in pari materia,* or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1–16 (1993).

*State v. White,* 110 Hawai'i 79, 83, 129 P.3d 1107, 1111 (2006) (citations omitted) (alterations in original) (ellipses points in original).

## III. DISCUSSION

Althouse initially contends that the trial court erred when it failed to grant his motion requesting that any minimum term hearing be conducted after the expiration of the fifteen-year mandatory minimum sentence imposed by the circuit court. He specifically argues that, pursuant to the plain language of HRS § 706–660.1, the HPA was jurisdictionally barred from conducting HRS § 706–669 proceedings to determine a minimum term of imprisonment until after the expiration of the fifteen-year mandatory minimum sentence entered by the circuit court.

HRS § 706–660.1 provides, in relevant part, the following:

§ 706–660.1 **Sentence of imprisonment for use of a firearm, semiautomatic firearm, or automatic firearm in a felony.** (1) A person convicted of a felony, where the person had a firearm in the person's possession or threatened its use or used the firearm while engaged in the commission of the felony, whether the firearm was loaded or not, and whether operable or not, may in addition to the indeterminate term of imprisonment provided for the grade of offense be sentenced to a mandatory minimum term of imprisonment without possibility of parole or probation the length of which shall be as follows:

(a) For murder in the second degree and attempted murder in the second degree-up to fifteen years;

(b) For a class A felony-up to ten years;

(c) For a class B felony-up to five years; and

(d) For a class C felony-up to three years.

*The sentence of imprisonment for a felony involving the use of a firearm as provided in this subsection shall not be subject to the procedure for determining minimum term of imprisonment prescribed under section 706–669; provided further that a person who is imprisoned in a correctional institution as provided in this subsection shall become subject to the parole procedure as prescribed in section 706–670 only upon the expiration of the term of mandatory imprisonment fixed under paragraph (a), (b), (c), or (d).*

(Emphases added.)

Althouse's point of error is premised upon a mistaken construction of the afore-emphasized language contained in HRS § 706–660.1.

Referring to other statutory provisions *in pari materia,*[2] we note that the plain language of HRS § 706–669(1) (1993) requires that "the Hawaii paroling authority *shall,* as soon as practicable but *no later than six months after commitment to the custody of the director of the department of [public safety]* hold a hearing, and on the basis of the hearing make an order fixing the minimum term of imprisonment to be served before the prisoner shall become eligible for parole." (Emphases added.) (Brackets in original.) The HPA was thus statutorily required to conduct a minimum term hearing prior to the expiration of the court's mandatory minimum sentence.

Althouse attempts to avoid the dispositive effect of the foregoing provision by asserting that "[u]nder the express language of Haw. Rev.Stat. § 706–660.1, Appellant is not subject to the authority, jurisdiction or procedures of the HPA to set a minimum term within six months after the commitment to the custody of the director of the department of public safety." However, Althouse misreads the plain language of the statute. HRS § 706–660.1 provides that it is the "*sentence of imprisonment*" (emphasis added)— not Althouse—that is exempt from "the procedure for determining minimum term of imprisonment prescribed under section 706–669."

Reinserting the appropriate subject component of the statutory provision, it is clear that, rather than imposing a jurisdictional bar on the HPA, the foregoing language merely clarifies that the sentencing court's imposition of a mandatory minimum term of imprisonment for a criminal defendant who uses a firearm in the commission of a felony is a procedure separate and distinct from the

---

**2.** *See White,* 110 Hawai'i at 83, 129 P.3d at 1111 ("Laws *in pari materia,* or upon the same subject matter, shall be construed with reference to each other.") (Quotation marks omitted.) (Citation omitted.).

HPA's determination of a minimum term of incarceration. In other words, HRS § 706-660.1(1) instructs the *sentencing court* to impose a mandatory minimum term of incarceration where a criminal defendant used a firearm in the commission of a felony, and the *sentencing court*, in imposing the mandatory minimum term, is not "subject to the procedure for determining minimum term of imprisonment prescribed under section 706-669," which governs the *HPA's* imposition of a minimum term of incarceration.

That interpretation is further buttressed by the relevant, concomitant legislative history. HRS § 706-660.1 was originally proposed as House Bill No. 3196-76 and subsequently enacted as part of Act 204 in 1976. 1976 Haw. Sess. L. Act 204, § 3 at 493-94. In a committee report on House Bill No. 3196-76, the legislature spoke in terms of an exemption from the procedure of the board of paroles and pardons,[3] as opposed to a jurisdictional bar:

> In addition, your Committee recommends an amendment that the sentence of imprisonment for a felony involving the case of a firearm be *exempted* from the procedure for determining minimum term of imprisonment and that the convicted defendant shall become subject to the parole procedure upon the expiration of the above-stated minimum term of imprisonment.

Hse. Stand. Comm. Rep. No. 492-76, in 1976 House Journal, at 1490 (emphasis added).

Additionally, the statutory instruction that "a person who is imprisoned in a correctional institution ... shall become subject to the parole procedure as prescribed in section 706-670 only upon the expiration of the term of mandatory imprisonment," HRS § 706-660.1(1), does not support Althouse's argument. To the contrary, the foregoing provision merely explains that the HPA has no authority to grant parole prior to the expiration of the mandatory minimum sentence imposed by the circuit court. In that regard, we have previously commented as follows:

> Generally, minimum terms of imprisonment are set by the Hawai'i paroling au-

thority. *See* HRS §§ 706-656, 706-659, 706-660, 706-669 (1993). However, under HRS § 706-660.1, minimum terms of imprisonment without the possibility of parole may be imposed by the trial court in certain circumstances. *Thus, HRS § 706-660.1 limits the Hawai'i paroling authority's power to grant defendants parole and ensures that certain defendants will remain imprisoned regardless of whether the paroling authority would otherwise release them.*

*State v. Jumila,* 87 Hawai'i 1, 11, 950 P.2d 1201, 1211 (1998) (emphasis added), *overruled on other grounds by State v. Brantley,* 99 Hawai'i 463, 56 P.3d 1252 (2002).

Accordingly, Althouse's contention is not supported by the plain language of HRS § 706-660.1 or its legislative history insofar as neither source exempts the HPA from the statutory mandate of HRS § 706-669, requiring it to hold a hearing "as soon as practicable but no later than six months after commitment to the custody of the director of the department of [public safety]."

Any remaining ambiguity in the seemingly perspicuous language is resolved by further legislative commentary, as follows:

> Your Committee by this bill and the amendments thereto, intends to require the court in cases of felonies where a firearm was used to impose a mandatory minimum term of imprisonment. *Nothing contained in this bill should be construed as precluding ... the Board of Paroles and Pardons from fixing the minimum term of imprisonment at a length greater than the length of the mandatory term of imprisonment provided for in this bill.*

Sen. Conf. Comm. Rep. No. 34-76, in 1976 Senate Journal, at 884 (emphasis added). That statement logically implies that the legislature contemplated concurrent impositions of minimum terms of incarceration by both the circuit court and the HPA, the lengths of which may differ. Although we have previously made clear that the HPA may not give effect to a minimum term of incarceration that is shorter than a mandatory minimum sentence imposed by the sentencing court,

---

3. The board of paroles and pardons was reconstituted as the HPA in 1976. *See* 1976 Haw. Sess. L. Act 92, §§ 1–10 at 145–49.

the legislative history indicates that the HPA is not precluded from imposing a minimum term that is longer. Thus, in cases where the HPA imposes a minimum term longer than the mandatory minimum term imposed by the sentencing court, the HRS § 706–669 hearing must necessarily take place prior to the expiration of the sentencing court's mandatory minimum term insofar as the hearing must, by statutory mandate, be held within six months of the defendant's commitment to the custody of the director of the department of public safety.

Therefore, we hold that (1) HRS § 706–669 required the HPA to conduct its minimum term hearing within six months of Althouse's commitment to the custody of the director of the department of public safety, and (2) that the HPA was not jurisdictionally barred by HRS § 706–660.1(1) from fulfilling its statutorily imposed duty.

That conclusion also disposes of Althouse's second point of error.[4] Therein, he argues that the circuit court erred by denying his motion to stay the HPA's minimum term hearing pending appeal, as follows:

> The arguments raised by Appellant in the previous section of this Opening Brief are jurisdictional in nature. In essence Appellant argues that the HPA lacks jurisdiction to conduct a minimum term hearing until the expiration of the mandatory minimum term of imprisonment.
>
> The Motion to Stay should have been granted based on the points and authorities set forth in the previous section.

Insofar as we have concluded that Althouse's first point of error is without merit, his second point of error is equally unavailing.

## IV. CONCLUSION

Based upon the foregoing analysis, we affirm the third circuit court's June 10, 2002 order.

---

4. We note that Althouse's notice of appeal is technically defective with respect to his second point of error. In particular, Althouse's notice of appeal does not identify the court's "Order Denying Petitioner's Motion For Stay Of New Minimum Term Hearing Pending Appeal Of Court's Decision'" as a basis from which his second point of error is derived. Indeed, Althouse's notice of appeal could not have identified the court's order denying his motion for stay inasmuch as the aforesaid order was filed after Althouse's notice of appeal.

Hawai'i Rules of Appellate Procedure [hereinafter "HRAP"] Rule 3(c)(2) (2002) unambiguously states that "[t]he notice of appeal shall designate the judgment, order, or part thereof and the court or agency appealed from. A copy of the judgment or order shall be attached as an exhibit." Here, Althouse failed to designate the order denying his motion for stay. He also failed to attach that order as an exhibit. Consequently, Althouse failed to comply with HRAP Rule 3(c)(2) with respect to his second point of error on appeal.

Nevertheless, HRAP Rule 3(a) states that the "[f]ailure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the appellate court deems appropriate, and may include dismissal of the appeal." Furthermore, we have previously stated that

> the requirement that the notice of appeal designate the judgment or part thereof appealed from is not jurisdictional. *Yoshizaki v. Hilo*

*Hospital*, 50 Haw. 1, 2, 427 P.2d 845, 846 (1967); *Credit Associates v. Montilliano*, 51 Haw. 325, 328, 460 P.2d 762, 764 (1969). Professor Moore states that "a mistake in designating the judgment, or in designating the part appealed from if only a part is designated, should not result in loss of the appeal as long as the intent to appeal from a specific judgment can be fairly inferred from the notice and the appellee is not misled by the mistake." 9 MOORE'S FEDERAL PRACTICE ¶ 203.18 (1975). In the circumstances of this case no single order embraces all of the issues of the parties, and the final judgment must be viewed as a composite of the several orders which became final and appealable upon the entry of the judgment and order of condemnation on January 28, 1976. The notice of appeal filed by appellant on February 18, 1976 fairly infers an intent to appeal from that composite of orders. There is no showing of any misleading of the other parties to their detriment. We conclude that we should disregard the date by which the judgment appealed from is designated in the notice of appeal. The notice is sufficient in form and timely filed to bring the appeal before us.

*City & County of Honolulu v. Midkiff*, 57 Haw. 273, 275–76, 554 P.2d 233, 235 (1976).

Therefore, although we perceive a technical lack of compliance with HRAP Rule 3(c)(2), we decline to excise Althouse's second point of error inasmuch as the notice of appeal was timely filed and there is no indication that any party suffered prejudice.